## Kortz et al. v. Union Central Life Ins. Co. et al.
(Decided June 9, 1936.)

MARY LOUISE GASSER and CLAUDE E. SMITH for appellants.

T. F. BIRKHEAD, SIDNEY B NEAL and O. L. FOWLER for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On June 18, 1927, the Union Central Life Insurance Company, plaintiff below, loaned to appellants, defendants below, the sum of $7,500, and to evidence the loan defendants executed their series of notes numbered from 1 to 31 inclusive. Note No. 1 was for $53.75, which was for interest on the loan from June 18 to August 1, 1927. Each of the other notes, Nos. 2 to 31, inclusive, dated August 1, 1927, was for $382.64, each due 6 months apart, maturing February 1 and August 1 of each year, covering a period of 15 years, the last one maturing August 1, 1942. The notes or payment of the loan was arranged on what is known as the amortization plan, that is, each note contained the interest on the principal for the 6 months preceding the due date of the note, and the remainder of the note was to be credited on the principal. By this plan the entire indebtedness, both principal and interest, would be liquidated in 15 years, or August 1, 1942.

To secure the payment of the notes, defendants executed and delivered to plaintiffs a mortgage on certain real property in the city of Owensboro, Ky., which mortgage contained certain provisions and stipulations, among which were that defendants were to pay all taxes, assessments, and charges of every character which were then, or which thereafter may become, liens on the mortgaged property; and to keep the buildings then or thereafter erected on the real estate insured at the option and satisfaction of the plaintiffs. In case of failure to pay the taxes, assessments, and charges against the property, or to keep the property insured, the plaintiff was privileged to pay such taxes and effect such insurance, and the sums so paid by it for taxes and insurance should become immediately due and payable at its option, with interest at the rate of 6 per cent. per annum, and such were to be included in, and secured by, the mortgage; that,

if defendants should fail to pay any of the notes or any notes given in renewal thereof when same became due, or should fail to comply with any of the covenants of the agreements set out in the mortgage and contract, the whole sum of money represented by the notes and secured by the mortgage, including the sums paid by plaintiff for taxes and insurance, should thereupon become due and payable at the option of plaintiff without notice and the mortgage foreclosed.

Defendants paid the notes Nos. 1 to 10, inclusive, but defaulted and failed to pay note No. 11, which matured August 1, 1932, but thereafter, on April 23, 1934, they paid the sum of $233.78, leaving an unpaid balance of $148.86 on that note. They also failed to pay the notes bearing serial No. 12, due February 1, 1933; serial No. 13, due August 1, 1933; serial No. 14, due February 1, 1934; serial No. 15, due August 1, 1934; serial No. 15, due February 1, 1935; or to pay any part thereof or interest thereon.

On February 7, 1935, plaintiff filed this suit in the Daviess circuit court to recover of defendants upon the unpaid notes with interest thereon, setting out the notes, the mortgage, and default in payment thereof by defendants, and also that defendants had failed to pay the city taxes for the years of 1931 to 1934, inclusive, in the total sum of $609.37, including interest and penalties thereon; and defendants had failed to keep the property insured, and it paid to the Hartford Fire Insurance Company the sum of $69.65 for fire insurance policy, and defendants repaid it the sum of $47.46, leaving a balance of $22.19 unpaid and owing to plaintiff, and it exercised its rights under the mortgage by paying the taxes and insurance, and asked to recover those sums of defendants, and that same be included in the mortgage liens, and declared all the unpaid an unmatured notes due and payable as provided by the precipitating clause of the mortgage. Plaintiff also alleged that defendants had executed mortgages to R. C. Calhoun and T. F. Birkhead on the same property, to secure Birkhead in the payment of a note executed to him in the sum of $2,630, and to secure Calhoun in a payment of a note of $2,220, which mortgages were executed to Birkhead and Calhoun on June 24, 1927, subsequent to plaintiff's mort-

gage, and asked that Calhoun and Birkhead be made parties to the action and assert their claims, if any they had.

Plaintiff prayed to recover of the defendants the sums of money represented by each unpaid and past-due notes, and the further sum of $4,568.01 with interest, which latter sum represented the notes bearing maturing dates from February 1, 1935, to August 1, 1942, but which it declared due under the precipitating clause of the contract; and the further sum of $609.37, with interest thereon at the rate of 6 per cent. from February 1, 1934, until paid, this sum representing the amount of delinquent taxes paid by appellee, and for the further sum of $22.19, with interest at 6 per cent. from November 9, 1934, until paid, representing the balance paid by it on fire insurance policy, and that the mortgage be foreclosed and the property sold in satisfaction of its debt, interest, and costs.

T. F. Birkhead filed his answer and cross-petition in which he pleaded in substance that on June 24, 1927, the defendants Kortz and Rawlings signed, executed, and delivered to him their negotiable promissory note for the sum of $2,630, due and payable four years after date, with interest at the rate of 6 per cent. per annum, and that no part of the note had been paid and was past due. He alleged that, to secure the payment of the note, defendants executed to him a mortgage on the same property described in the petition, but which mortgage constituted a third lien against the property. He asked for judgment on the note and a foreclosure of the mortgage, and that the property be subjected to the payment of his debt, subject to the plaintiff's first lien and subject to a second lien to secure the pafment of a previous note for the sum of $1,575, executed to him by defendants and by him assigned to Josie Wheatley.

Josie Wheatley filed her intervening petition, answer, and cross-petition, alleging that on June 24, 1927, the defendants Kortz and Rawlings signed, executed, and delivered to T. F. Birkhead their certain negotiable promissory note for the sum of $1,575, due and payable 3 years after date, with interest at 6 per cent. per annum, together with a mortgage on the same property described in the petition to secure the pay-

ment of the note, which mortgage was second to the plaintiff insurance company's mortgage. She alleged that on the 25th day of June, 1927, for a valuable consideration, Birkhead transferred the note to her, and she was the owner and holder of the note, and entitled to the benefit of the mortgage lien of her assignor, Birkhead, to secure the payment of same, and asked judgment against defendants for the sum of the note, with interest therein, and that she be adjudged a second lien on the property described in the mortgage to secure the payment of her note.

Defendants filed their answer to the petition of the plaintiff insurance company, denying that it paid the sum of $609.30 or any amount for city taxes, interest, and penalties against the property described in the petition, or that it paid the sum of $22.19 on the fire insurance policy. In addition to these denials, they pleaded that they had made arrangements with the city of Owensboro to give them credit for the amount of its taxes, alleged to have been paid by the plaintiff, for printing and other work and services done by them for the city, and therefore they were not indebted to the city for taxes alleged to have been paid by plaintiff.

They also alleged in substance that they had made arrangements with the insurance agency of Joe A. Vittotow & Co. to write a fire and tornado insurance policy on the property, and made arrangements with the Vittotow agency to credit their account with it for the full amount of the premium on the policies, and that the Vittotow agency was then indebted to them in the sum and amount more than sufficient to cover the premiums of the insurance policies, and that they believed alleged and charged as true that the Vittotow agency did credit the said account with them for the full amount of the premiums of said policies, and therefore plaintiff had no right or authority to have or cause the property to be insured or to pay the premiums thereon.

They admitted the execution of the notes to the plaintiff as set out in its petition, but alleged that they were charged interest in the excess of the legal rate, and called upon plaintiff to purge its indebtedness of the usury embodied and embraced therein.

They filed their joint answer, set-off, counter-claim, and cross-petition to both the cross-petition of Josie Wheatley and T. F. Birkhead, denying that they signed, executed, and delivered to Birkhead the notes for $2,630 and $1,575, respectively, for a good and valuable consideration, and denied their liability on the mortgages purporting to secure the payment of the notes.

For their set-off and counterclaim they pleaded in substance that they had theretofore employed T. F. Birkhead as their attorney to represent them in a suit then pending in the Daviess circuit court, styled the United States National Bank v. George H. Cox Co., wherein the said George H. Cox Company and the defendants were being sued for the sum of $2,000, and that these defendants and the George H. Cox Company had a good and valid defense to all the amount sued for, and that, because of the careless-ness, negligence, incompetency, and irresponsibility of the cross-petitioner, T. F. Birkhead, as an attorney, a judgment in the sum of $1,250 was rendered against them and the George H. Cox Company. And further, that at the same time there was another suit pending in the Daviess circuit court styled the Phono-graph Co. v. George H. Cox Co. and these defend-ants, to which they had a valid defense, and that they employed the intervening petitioner, Birkhead, to rep-resent them in that action and imparted to him as their attorney such facts that, if properly handled, would have proven that they or the George H. Cox Company did not owe the sum sued for, which was $3,000, or any sum; but that, because of the negligence, incompetency, and carelessness of Birkhead as their attorney, a judgment was rendered against them for $3,000 in that action, and Birkhead, as their attorney, prosecuted an appeal therefrom to the Court of Ap-peals and during the pendency of the appeal an offer of settlement was made to Birkhead by the adverse parties, offering to settle the action for $1,000, and that Birkhead, without consulting these defendants or advising them as to whether or not it would be to their best interest to accept this settlement, refused to set-tle the judgment, and allowed the case to go to the Court of Appeals, and upon a trial of the appeal the judgment was affirmed. They alleged that if Birk-

head had been a competent attorney, he would have readily seen that he would lose the case in the Court of Appeals and that the judgment of $3,000 would be affirmed against his clients, and that Birkhead knew at the time that he could not win the case in the Court of Appeals, and knew at the time that he refused to settle the judgment for the sum of $1,000 while the appeal was pending and before it was tried that he was not acting in behalf of the best interests of his clients, and knowingly, willingly, and fraudulently refused the offered settlement and that final judgment was entered in said case for the sum of $4,260, including interest, penalty, and costs.

Answering the intervening petition of Josie Wheatley, they alleged that the intervening petitioner Birkhead induced the defendants to execute and deliver to him the $1,575 note which he assigned to Josie Wheatley and upon which she sues, which was for attorney fees except the sum of $600, which was paid by Birkhead on certain obligations then owed by defendants, and that at the time said note and mortgage was executed and delivered to Birkhead as attorney for the defendants, he advised them that he would be able to save them the whole of both claims upon which suit was then pending against them, which he failed to do, and therefore the consideration for the note failed except for the $600 paid by Birkhead on their obligations. They also alleged that at the time Birkhead assigned the note to the intervening petitioner Josie Wheatley, she knew that there was no consideration for the giving of the note and mortgage except to the extent of $600, and that she ought not to recover on her claim more than $600. They further pleaded in substance that, because of the negligence, carelessness, and conduct of Birkhead in handling their litigation as their attorney, the court should marshall all the claims and determine the rights of the parties and ought to set off against the claims of Birkhead and Wheatley as against the defendants the sum of $4,805, and prayed that this sum bet set off against any sum which the court may determine these defendants owe either Josie Wheatley or Birkhead or R. C. Calhoun, and for judgment against Birkhead for the sum over and above the sum of $1,600.

The plaintiff, insurance company, and the inter-

vening and cross-petitioners, Birkhead and Wheatley, demurred to the answer, set-off, and counterclaim of the defendants, and, without waiving demurrer, filed their replies thereto controverting the allegations of the answer, and the insurance company filed a table or schedule of the notes showing the due date, amount of each note, and the amount of principal and interest contained therein, and the balance of principal after the payment of each note, in explanation and defense to defendants' charge that the notes contained interest above the legal rate or was usurious.

The court sustained the demurrers to each and all of the defenses offered by defendants to insurance company and cross-petitioners, Birkhead and Wheatley, and entered judgment in favor of the plaintiff on November 8, 1935, in accordance with the prayer of its petition, aggregating the sum of $7,620, for the plaintiff, insurance company, representing the principal and interest on the unpaid notes, and also judgment for Birkhead and Wheatley on their notes. Defendants appeal.

In reference to the plea of usury, we have examined the table and schedule of notes set out in plaintiff's reply, which is undenied, and we find that the notes contained no usury.

The face of each note is for the sum of $382.64, the first of which matured February 1, 1928. The interest on the face of the loan of $7,500 for the 6 months preceding the due date of the note is $225, and this sum subtracted from the face of the note leaves $157.64, which was deducted from the principal, leaving a balance of $7,342.36 as the new principal; the interest on this new principal up to August 1, 1928, is $220.26, and this sum subtracted from the principal of the note and this sum subtracted from the face of the note leaves a balance of $162.38, which was applied to and deducted from the last principal, reducing it to $7,-179.98. This process carried through the whole series of notes clearly manifests that there was no usury contained or charged therein. Defendants insist that in the end it had paid the sum of $262.97 in excess of legal interest, and that, if it be conceded that the court properly allowed plaintiff to recover of the defendants the sums it paid for taxes and insurance, the judgment should be reversed to the extent of $262.97.

It appears that appellants disregarded the maturing installment notes that became due February 1, 1933, August 1, 1933, February 1, 1934, August 1, 1934, and February 1, 1935. In addition to the unpaid principal as of February 1, 1935, which was precipitated, although the notes maturing on February 1, 1933, to February 1, 1935, embraced the interest on each principal for the 6 months previous to the maturing date of each note, each note was an independent obligation and a promise to pay a definite sum with interest after maturity, and under the amortization plan a charge of interest on those note was not usurious and a calculation based on the installment plan according to the rule of simple interest is not applicable. Union Central Life Ins. Co. v. Stevens et al., 143 Kan. 757, 57 P. (2d) 57.

We also think that defendants' answer to plaintiff's allegations that defendants had defaulted in the payment of city taxes and their failure to keep the property insured is also without merit. After denying that plaintiff paid the taxes and insurance premium, they alleged that they had some sort of an agreement with the city of Owensboro to the effect that the city would give them credit for the taxes in consideration of certain services performed or to be performed by them for the city. But they filed no tax receipts or other evidence indicating that the city taxes had been paid or that the lien that the city had against the property by virtue of the tax tickets had been satisfied with the city, or that their agreement with the city had been carried into effect. On the other hand, plaintiff files the tax receipts evidencing that it actually paid such taxes. Very clearly defendants' answer presented no defense to their failure to satisfy the tax liens against the property as provided in the mortgage. As to the insurance, defendants alleged that they made some arrangements with some other company to insure the property or that they had actually effected insurance on the property in compliance with the contract, but they filed no policies, receipts, or other evidence in support of their plea that they had in effect insurance on the property, and the same was in effect previous to and at the time plaintiff paid to the Hartford Insurance Company the balance of the insurance premiums which was past due, thereby effecting insurance on the property. Under

the rule that a pleading will be construed more strongly against the pleader, when the pleader denies an allegation of his adversary and then explains the denial by setting out facts in support of it, the pleading will be construed as a whole, and, unless the facts offered in suport of the denial are sufficient to support a defense or cause of action, such pleading will be treated as a plea in avoidance and may be reached by a demurrer. We conclude, therefore, that the court properly sustained demurrers to the answer as to these items.

Defendants' defense offered to the notes executed to Birkhead, one of which was transferred to the intervening petitioner Josie Wheatley, is also obviously defective. They could not resist the claim of Josie Wheatley on the note of which she is a holder in due course by interposing a plea of no consideration as between them and the payee, Birkhead. Cross v. Snyder's Adm'x, 164 Ky. 370, 175 S. W. 641, 642. Nor could they offset Birkhead's demand (note) by a demand for unliquidate damages resulting from his alleged negligence of handling and attending to their legal affairs as their attorney, in the absence of an allegation that Birkhead was insolvent or a nonresident.

In Cross v. Snyder's Adm'x, supra, it is said:

"In order to entitle a party to plead unliquidated damages as a set-off, it must appear that such party has not an adequate remedy, and is prevented from collecting his demand by an independent action in the usual way. For this reason it is necessary to allege that the plaintiff is insolvent, or is a nonresident, or some sufficient reason which will show that, if the defense is not allowed, the party will be deprived of his rights in the collection of his demands. Bates et al. v. Reitz, 157 Ky. 514; 163 S. W. 451."

See, also, Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24, 10 Ky. Law Rep. 865; Section 96 Civil Code of Practice; Garner v. Jones, 94 Ky. 135, 21 S. W. 647, 14 Ky. Law Rep. 792.

Lastly, it is insisted that appellant's exceptions to the report of sale should have been sustained because the judgment of the court directed the commissioner to

advertise the sale of the property in a daily newspaper for 3 consecutive days, excluding Sunday, just prior to the date of the sale. It is insisted that this was not a valid compliance with section 14a-1 of the Kentucky Statutes, which in part reads:

"Provided, That in counties where there is a daily newspaper published or in general circulation, publication of such notice of sale for three consecutive days next preceding the day of sale shall be sufficient."

The sale of the property was advertised on Thursday, Friday, and Saturday, October 17th, 18th, and 19th, preceding Monday, October 21st, the date of the sale, but was not advertised on Sunday, October 20th, the day preceding the sale. It is argued that, since the notice of sale was not published in the Sunday issue of the paper, there was a failure to comply with the Statutes, and that the exceptions to the sale should have been sustained. This question has been passed upon by this court in numerous cases holding that, as Sunday is not a judicial day, a publication on that day will neither aid nor detract from the validity of the publication. Hatfield v. City of Covington, 177 Ky. 124, 197 S. W. 535; Ormsby v. City of Louisville, 79 Ky. 197.

It is insisted for appellants that the Ormsby Case, supra, is not applicable to the present case, because of the changed conditions and the tendency to liberalize the Sunday laws since the publication of that opinion. But it may be noticed that that case is referred to with approval in the comparatively recent case of Hatfield v. City of Covington, supra.

We think that the advertisement of the sale of the property was sufficient to satisfy the requirements of the Statutes, and the court properly overruled exceptions thereto.

For reasons indicated, the judgment is affirmed.