VERNON L. CARLSON, APPELLANT, v. RAY E. NELSON, DOING BUSINESS AS RAY'S FARM SERVICE, APPELLEE.

285 N. W. 2d 505

Filed November 20, 1979. No. 42440.

Robert M. Harris and Randall L. Lippstreu, for appellant.

Padley, Dudden, Schroeder & Schoon, P.C., for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.
This is an action commenced in the county court

of Keith County by the plaintiff Carlson, purchaser, against the defendant Nelson, seller, for money damages for the alleged breach of a contract of sale of a certain 1963 John Deere combine, model 55. The plaintiff sought damages measured by the loss of the benefit of his bargain, i.e., the excess of market value over contract price at the time he learned of the alleged breach, all as provided by section 2-713, U. C. C. The county court rendered judgment for the plaintiff in the amount of $3,136.76.

Upon appeal to the District Court, where the cause was tried de novo on the record under the provisions of section 24-541, R. R. S. 1943, the judgment of the county court was vacated. The District Court entered judgment for the plaintiff in the sum of $500, the amount of the downpayment made by the plaintiff purchaser. The District Court held the purchaser's rights under the facts of the case were governed by the provisions of section 2-613, U. C. C., which prescribes the remedies of a buyer under the circumstances listed in the statute where the property has suffered casualty and is either destroyed or damaged. We reverse the judgment of the District Court and remand the cause for retrial in the District Court.

Section 2-713 (1), U. C. C., provides as follows: "Subject to the provisions of this article with respect to proof of market price (section 2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (section 2-715), but less expenses saved in consequence of the seller's breach." Section 2-613, U. C. C., is as follows: "Where the contract requires for its performance goods identified when the contract is made, and the goods suffer casualty without fault of either party before the risk of loss passes to the

buyer, or in a proper case under a 'no arrival, no sale' term (section 2-324) then

"(a) if the loss is total the contract is avoided; and

"(b) if the loss is partial or the goods have so deteriorated as no longer to conform to the contract the buyer may nevertheless demand inspection and at his option either treat the contract as avoided or accept the goods with due allowance from the contract price for the deterioration or the deficiency in quantity but without further right against the seller."

In his appeal to this court, the plaintiff urges the District Court erred in placing the burden on him, the buyer, to prove the combine was damaged through fault of the seller; and in holding that, in the absence of evidence of that fault, section 2-613, U. C. C., is applicable.

A proper understanding of this case requires that we state the issues made by the pleadings below, summarize the evidence which in most part is undisputed, and then set forth the specific findings made by the District Court. The petition alleged that on February 26, 1974, at Grant, Nebraska, defendant sold to plaintiff the combine in question for the sum of $2,000, and for the additional sum of $100 agreed to deliver the combine to plaintiff at Minatare, Nebraska. On March 21, 1974, while an employee of defendant was in the process of delivering the combine, the vehicle carrying the machine hit a culvert, causing a chain restraining the machine to break. The combine upset and was badly damaged. The next day defendant's employee returned the combine to the defendant's place of business at Roscoe, Nebraska. The evidence established the above facts without dispute. The plaintiff further alleged that on August 15, 1974, defendant notified him that defendant planned to sell the combine to a third party. The plaintiff alleged that at that time the combine, or one in a similar condition before damage, was of

the market value of $5,500. The plaintiff pleaded his willingness and ability to perform, but that the defendant refused to deliver. Then followed a prayer for monetary damages.

The answer of defendant alleged plaintiff had rescinded the contract to purchase, the terms being that defendant would return the downpayment and the contract would be discharged. Defendant also pleaded the defense of waiver.

After trial de novo, the District Court found the contract of sale had been made as alleged and the accident and damage to the combine had occurred. Plaintiff inspected the combine the day following the accident and refused to accept delivery. The combine was taken back to defendant's place of business, but a new "head" for the combine could not be obtained by defendant. The latter sold the combine in August 1974 for salvage. The evidence shows without dispute that that sale was for $1,200. The District Court also found there was evidence that by August 1974, a combine of the type in question was worth between $4,500 and $5,000. It further found the evidence did not establish by whose fault the combine was damaged and under the provisions of section 2-509 (3), U. C. C., the risk of loss remained with the seller.

The court, in the memorandum opinion which it incorporated into the judgment, cited section 2-613, U. C. C., as the controlling law and stated further: "The first Comment under this section reads:

" '1. Where goods whose continued existence is presupposed by the agreement are destroyed without fault of either party, the buyer is relieved from his obligation but may at his option take the surviving goods at a fair adjustment. "Fault" is intended to include negligence and not merely wilful wrong. The buyer is expressly given the right to inspect the goods in order to determine whether he wishes to avoid the contract entirely or to take

the goods with a price adjustment.'

"It should be emphasized again that the plaintiff made no effort during the trial to establish fault, although William N. Hendrix, Nelson's driver who attempted delivery on March 21, was present and testified. Negligence of Hendrix would be imputable to Nelson, since Hendrix was an agent of Nelson. However, the Court cannot presume that the damage to the combine was due to the negligence of Hendrix. The burden of proof rests with the plaintiff to show those facts which would give him a right to recover.

"Therefore, since this section of the Uniform Commercial Code is applicable, a quotation from a recognized authority is helpful.

" 'Regardless of which option the buyer exercises he is limited thereto as his sole remedy. He cannot therefter assert any right against the seller.' 2 Anderson, Uniform Commercial Code, § 2-613:6, p. 290.''

Plaintiff testified he had refused to take the combine in its damaged condition. He stated he had told defendant's driver he would take it if it were repaired by replacing the damaged header. The Uniform Commercial Code seems to contemplate that the seller shall have a right to timely cure a tendered delivery which is defective because the goods fail to conform. § 2-510 (1), U. C. C.

The evidence would support the following findings: A replacement header could not be obtained. The header could not be completely restored to its previous condition, but it had been straightened sufficiently to operate. On or about April 10, 1974, defendant returned plaintiff's $500 downpayment, which was refused by plaintiff. Defendant had at about that time made an agreement to sell the damaged combine to a neighbor and acquaintance of plaintiff, contingent upon plaintiff's refusal to take the combine. In April 1974, before return of the downpayment was tendered, defendant, under the

contingent contract, asked plaintiff if he intended to take the combine and was told he did not want the machine. The evidence indicates it was after this conversation that the contingent sale was consummated and return of the downpayment again tendered.

In the above state of the evidence, it must be determined whether the trial court was correct in its ruling that section 2-613, U. C. C., defined the rights of the parties and limited the purchaser to avoiding the contract, or accepting the combine in its damaged condition with due allowance from the contract price for deterioration, but without further right against the seller.

Before the provisions of section 2-613, U. C. C., come into play, four conditions must be satisfied: (1) The goods, i.e., the specific subject matter of the contract, must have been specifically identified when the contract was made, viz., the contract is to be fulfilled only by delivering certain identified goods and not merely by delivery of goods of similar or identical specifications. (2) The goods must suffer casualty. (3) The casualty must occur without the fault of either buyer or seller. (4) The casualty must occur before the risk of loss passes to the buyer. The inference from requirement (3) is that if the buyer is at fault, he will remain obligated to purchase, but if the seller is at fault, he will remain obligated to deliver and be liable for the appropriate damages if he does not. Nordstrom, Law of Sales, §' 108, pp. 327 and 328.

When all of the conditions described in section 2-613, U. C. C., occur, the remedies of the buyer are limited. He may either (1) avoid the contract completely, or (2) accept the specified goods with due allowance on the purchase price for their diminution in value. If he chooses to avoid the contract, he is entitled to a refund of the money downpayment. No matter which option he chooses, he has no further

right against the seller, i.e., he is not entitled to damages for either loss of the bargain or consequential damages. 2 Anderson, Uniform Commercial Code, § 2-613:6, p. 289. The facts in this case and the court's finding show that without dispute conditions (1), (2), and (4) as we have listed them have been satisfied.

Section 2-613, U. C. C., deals with a situation, loss, or damage to the property which it is reasonable to assume the parties did not contemplate when they contracted. That section has no application if the risk of loss has passed to the buyer. Section 2-509, U. C. C., establishes when that risk passes. Under the particular facts in evidence of this case, subsection (3) of section 2-509, U. C. C., is the only applicable section. It provides: "In any case not within subsection (1) or (2), the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery." In the case before us, the risk had not passed under either of the alternatives named. The seller was a merchant and there had been no delivery. Even if the seller had not been a merchant, there had been no tender of delivery.

Under the undisputed facts before us in this case, the only one of the conditions of section 2-613, U. C. C., in issue is the question of whether damage to the goods was caused by fault of a party. Must the buyer, who was plaintiff in this action, adduce evidence not only to show that he was not at fault, but also that the defendant was? The answer would seem to depend upon where the law places the burden of proof, a point the Uniform Commercial Code does not cover.

If section 2-613, U. C. C., is to be viewed as providing an affirmative defense to a defendant seller, then he would, under the normal rules, have the burden of proof. If that section constitutes merely a definition of the measure of damages of a plaintiff

buyer under the particular circumstances described in the statute, then it would seem if the buyer does not negative his own fault he cannot recover. The section, however, does more than either of these two things. It has the effect of total avoidance of the contract if the damage is without fault of either party and if the other conditions mentioned exist. In the case of partial destruction or damage, it gives the buyer the option to either avoid or to accept the goods with a diminution of purchase price. In the latter events it also affords certain benefits to the seller. If the buyer treats the contract as avoided, the seller need only return the downpayment. If the buyer elects to accept the goods, then his additional rights against the seller are limited to due allowance from the contract price.

What section 2-613, U. C. C., does, of course, is define the substantive rights of the parties just as does section 2-711, U. C. C. These statutes are a part of the contract, just as much as if embodied in a written contractual agreement. Existing statutes and laws with reference to which a contract is made (assuming there are no valid contractual provisions providing otherwise) enter into and become part thereof. Faught v. Platte Valley Public Power & Irrigation Dist., 155 Neb. 141, 51 N. W. 2d 253.

It is elemental law that the burden of proof is upon the plaintiff to prove those things which constitute the necessary elements of his cause of action and the defendant bears the burden of proving those things which constitute affirmative defenses. Another way of stating the principle is that he who has the burden of pleading a fact must prove it. Bishoff v. Pieper, 187 Neb. 783, 194 N. W. 2d 177.

Section 2-613, U. C. C., appears to be a codification with changes of particular aspects of the contract doctrine of excuse of performance and discharge of contract by reason of impossibility. Cf., Restatement, Contracts, §§ 460, 469. It is also an aspect of

failure of consideration understood in the broad generic sense of "where an exchange of values is to be made and the exchange does not take place, either because of the fault of a party or without his fault." Restatement, Contracts, § 274, p. 400, § 281. Nordstrom, *supra*, p. 328, says that section 2-613, U. C. C., is an example of excuse from performing a contractual promise. Supervening impossibility which the defendant had no reason to anticipate and to which his fault has not contributed is historically considered as a matter of affirmative defense which a defendant who relies thereon must plead and prove. Preston v. Farmers Irrigation District, 138 Neb. 504, 293 N. W. 343. We see no reason why, except as necessarily implied from the substantive changes made by section 2-613, U. C. C., the basic rules on burden of proof should not continue.

As we have already indicated, section 2-613, U. C. C., defines rights of both buyer and seller. How section 2-613, U. C. C., must be applied will depend upon who is plaintiff and which party is seeking benefit of the statutory provisions contained in that section. The only one of the several conditions of section 2-613, U. C. C., which is in dispute in this case is that of fault causing the damage.

Here the plaintiff buyer pled facts which, if proved, entitled him to damages under section 2-713, U. C. C., which prescribes the general rule of damages for unexcused failure to deliver. He also alleged the fact of damage to the property while in the defendant's possession. At trial he introduced evidence which, without dispute, showed the damage was not the consequence of any fault on his part. He pled and made proof of facts which showed nondelivery by the defendant seller. He offered proof of damages within the provisions of section 2-713, U. C. C. Did he also need to prove the seller was at fault? Stated in another way, in the absence of evidence on

the point is it to be presumed that a defendant seller in possession when the goods are damaged or destroyed is without fault?

The provision of section 2-613, U. C. C., "goods suffer casualty without fault of either party," is not very artfully drawn. However, we believe its purpose is that indicated by Nordstrom. It is possible to conjure many hypothetical situations in which complex problems on burden of proof may be raised in connection with that condition. We decide only the issue which the posture of this case and the evidence present.

It would defeat the implicit purpose of section 2-613, U. C. C., if it were construed to enable a defendant to take advantage of an absence of evidence as to his fault to limit damages for nonperformance. Yet this would be the practical effect of requiring the plaintiff buyer in this case to prove that the damage was not caused by the defendant's fault. Under the posture of the case before us, it was incumbent upon the defendant seller to prove the damage occurred without his fault if he wished to have the benefit of the damage limitation provision of section 2-613, U. C. C. We hold the trial court erred in placing the burden of proof on the plaintiff on that issue.

While the above error requires reversal, it is not dispositive of the entire case. The defendant, in his answer, tendered the defense of mutual rescission. The evidence tending to support that defense has been previously summarized. It was, if believed by the trier of fact, sufficient to establish that the parties agreed to return to the status quo. The District Court did not make any finding on that issue. Neither did it make any general finding for the defendant from which we might be able to infer that that issue was decided in the defendant's favor. A general finding that the judgment should be for a certain party warrants the conclusion the trial court found in his favor on all issuable facts. Henkle &

Joyce Hardware Co. v. Maco, Inc., 195 Neb. 565, 239 N. W. 2d 772; Burgess v. Curly Olney's, Inc., 198 Neb. 153, 251 N. W. 2d 888.

Absent either a specific finding on the issue or a general finding for the defendant, it is necessary that the issue be considered on the retrial. On this issue we call attention to the provisions of section 2-720, U. C. C., which are as follows: "Unless the contrary intention clearly appears, expressions of 'cancellation' or 'rescission' of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach."

REVERSED AND REMANDED FOR
A NEW TRIAL.

BOSLAUGH, J., concurs in result.