DAVIS ERECTION CO., INC., A NEBRASKA CORPORATION, APPELLANT, V. DANA JORGENSEN, DOING BUSINESS AS JORGENSEN GRADING, APPELLEE, AND ERIKSEN CONSTRUCTION CO., INC., GARNISHEE–APPELLEE.

534 N.W.2d 746

Filed June 30, 1995.   No. S-93-1073.

Gregory C. Scaglione, of Koley, Jessen, Daubman & Rupiper, P.C., for appellant.

No appearance for appellee.

Gregory P. Drew for garnishee–appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

This garnishment proceeding arises out of the interplay of three construction contracts, one entered into by and between the judgment creditor and garnishor, plaintiff–appellant Davis Erection Co., Inc., and its judgment debtor, defendant–appellee Dana Jorgensen, doing business as Jorgensen Grading; another entered into by and between Jorgensen and the garnishee–appellee Eriksen Construction Co., Inc.; and still another entered into by and between Eriksen Construction and the County of Douglas. Determining that Eriksen Construction was not then indebted to Jorgensen, the district court in effect dismissed the within proceeding. Davis Erection thereupon appealed to the Nebraska Court of Appeals, urging, in summary, that in so ruling, the district court erroneously

permitted Eriksen Construction to set off against its certain, liquidated, and mature indebtedness to Jorgensen the contingent, unliquidated, and immature claims Eriksen Construction asserts against Jorgensen. We, on our own motion, removed the matter to this court in order to regulate our caseload and that of the Court of Appeals. We now reverse the judgment of the district court and remand the cause for further proceedings.

## II. SCOPES OF REVIEW

Garnishment is a legal action; thus, to the extent factual issues are involved, the findings of the fact finder will not be set aside on appeal unless clearly wrong. See *Action Heating & Air Cond. v. Petersen*, 229 Neb. 796, 429 N.W.2d 1 (1988). However, to the extent issues of law are presented, we as an appellate court have an obligation to reach independent conclusions irrespective of the determinations made by the court below. See *Sylvis v. Walling, ante* p. 168, 532 N.W.2d 312 (1995).

## III. FACTS

The county's contract with Eriksen Construction obligated the latter to remove a bridge and build a box culvert under a road. Eriksen Construction contracted part of its obligation to Jorgensen under a document which required Jorgensen to dig the ditch in which Eriksen Construction was to build the culvert, after which Jorgensen was to backfill the ditch with earth, regrade the slopes, build the road, and do other related work. In exchange, Eriksen Construction agreed to pay Jorgensen the "approximate amount of contract $65,064.35 . . . [w]hen and as contract is paid by [the county] with 10% retained until project is accepted by" the county.

In September 1992, one of the slopes caved in during the course of Jorgensen's work and slid into the excavated area because of the presence of a live spring. Jorgensen advised Eriksen Construction by letter that the unforeseen excavation problem resulted because of the effect the abnormal amounts of precipitation had on the ground water and recommended that additional time and cost be expended to remedy the situation, which it characterized as serious because the walls continued to slide.

After Jorgensen found he could not excavate the cave–in, he contracted with Davis Erection to do so. Eriksen Construction then obtained the county's oral approval for extra compensation and later wrote the county that Jorgensen had secured a contractor to excavate the area and that in accordance with the county's verbal agreement, a claim for the costs incurred and time lost would be submitted.

Eriksen Construction thereafter billed the county $33,121.63 for the cave–in work, including charges made by Jorgensen in the sum of $1,400 and by Davis Erection in the amount of $13,637.

Following a series of negotiations, the county issued a change order on June 18, 1993, approving payment to Eriksen Construction of $25,967 for the cave–in work. In its view, the remaining portion of Eriksen Construction's claim represented charges for work contemplated by its original contract with the county. On July 6, 1993, the county drew a warrant directing its bank to issue a $25,967 check to Eriksen Construction. However, Eriksen Construction paid neither Jorgensen nor Davis Erection for the work they did in connection with the change order.

In the meantime, Jorgensen had written Eriksen Construction on June 17, 1993, that the latter's failure to pay and its failure to require the county to issue a change order constituted a breach of the contract between Jorgensen and Eriksen Construction and that Jorgensen would withdraw his equipment from the jobsite until the change order was executed and payment made.

That same day, Eriksen Construction wrote Jorgensen that all requests had been promptly presented to the county, that no one from Eriksen Construction had given verbal directives to perform extra work, and that Jorgensen had been paid all sums due to him to date. The letter further called Jorgensen's attention to the provision in their contract providing that " 'no extra work shall be allowed or changes made . . . or paid for by [Eriksen Construction] unless and until authorized by [Eriksen Construction] in writing before the work and/or changes are begun.' " The letter also advised Jorgensen that their contract required him "to be on the jobsite with sufficient

equipment and manpower to perform the balance of [the] contract . . . ."

Negotiations between Eriksen Construction and Jorgensen apparently continued, for by letter dated June 18, 1993, Jorgensen advised Eriksen Construction that payment under the change order of $12,437 was acceptable, $11,987 for Davis Erection and $450 for Jorgensen.

Jorgensen testified that he decided not to leave the job, returned to the site, and proceeded to work when the weather permitted. However, on or about June 21, 1993, the owner of the backhoe which Jorgensen had leased terminated the arrangement. Jorgensen needed a backhoe but could not rent one. As a result, Eriksen Construction rented a backhoe for him. Eriksen Construction's witness testified that normally, an amount for the rental of the backhoe would be withheld from any payment due Jorgensen, but no written agreement regarding the matter was executed. However, Eriksen Construction estimated the total rental cost for the 5-week period Jorgensen kept it to be $9,000. In addition, there was a $3,467 charge for damages to the backhoe.

In the interim, on July 15, 1993, Davis Erection obtained a $15,137.79 default judgment against Jorgensen. Davis Erection thereafter caused issuance of its summons in garnishment, which Eriksen Construction received, along with the order of garnishment and garnishment interrogatories, on July 28, 1993.

During the evening of July 28, Eriksen Construction's president placed a telephone call to Jorgensen and asked why Eriksen Construction had been served with a garnishment summons. Jorgensen told the president that he could not continue on the job because of the weather, nonpayment under the change order, and "a multitude of things," including the garnishment. The president requested that Jorgensen put his intentions in a letter.

In a letter dated July 29, 1993, Jorgensen stated that he was not able to complete the remaining work because of the weather, untimely payment under the change order, financial problems, and the legal action instituted against him, and requested that he be released from the project. Eriksen Construction responded by letter that it would finish the work contemplated

in their contract and charge Jorgensen for any costs incurred.

In its answers to the garnishment interrogatories, Eriksen Construction admitted that Jorgensen and Eriksen Construction had executed a contract; that periodic progress payments had been made to Jorgensen pursuant to the billings Eriksen Construction had received; and that pursuant to their contract, Eriksen Construction had retained 10 percent of the periodic progress payments in the amount of $4,380.87, which was not payable until the project was accepted by the county. Eriksen Construction took the position that because of Jorgensen's breach, no monies were payable to him at the time. Davis Erection then filed an application to determine Eriksen Construction's liability; in its operative answer to the application, Eriksen Construction again denied owing any money to Jorgensen.

The record establishes that as of July 28, 1992, Eriksen Construction had received from the county payments totaling $157,857.16, including the sum paid under the change order. Eriksen Construction had paid Jorgensen $39,427.84, none of that sum being attributable to the change order and all of it being made by November 24, 1992. Jorgensen testified that he had not been paid for the approximate $8,000 to $10,000 worth of work he had performed from May through July 27, 1993.

Eriksen Construction's president testified that he was aware of several deficiencies in Jorgensen's performance which took place prior to July 28, 1993, for which Eriksen Construction was entitled to backcharge Jorgensen because he had already received full payment for that work. The concrete sewer pipe Jorgensen laid was cracked, so Eriksen Construction replaced it after Jorgensen abandoned the job at an approximate cost of $500. The president also testified that Jorgensen failed to complete the tree removal for which he was responsible, and estimated that it had cost Eriksen Construction approximately $500 to $1,000 to do so. An adjoining drainage system had to be regraded, which the president assumed cost approximately "[a] couple hundred." In addition, Jorgensen caused a retaining wall to crack when he was backfilling; however, as of the time of trial, the president did not know what the county would require in that regard.

Jorgensen testified that the county had notified him about the cracked sewer pipe and trees, but that Eriksen Construction had not notified him as to any backcharges for the cracked sewer pipe, tree removal, regrading of the drainage system, or cracked retaining wall. The only notice of setoff or retainage Eriksen Construction sent Jorgensen related to the 10-percent retainage provided for in their contract.

While the project had been completed by the time of the garnishment trial, the threatened liquidated damages for delay in completion had not been assessed by the county. Eriksen Construction's president anticipated a meeting with the county to discuss such, but it was the position of Eriksen Construction that the weather and possibly some engineering defects caused some of the delay.

Eriksen Construction's project manager testified that in his opinion, Jorgensen did not diligently pursue the project during the summer of 1993; according to him, Jorgensen failed to work on some days when the weather permitted and arrived at the jobsite without equipment or fuel for the equipment. In his view, the cost to repair the cracked pipe was "closer to a thousand [dollars]," tree removal was "maybe" $500 to $750, and repairing the adjoining drainage system was approximately $200. He was unsure as to what the county would require regarding the cracked retaining wall and did not have a cost estimate for any repair.

## IV. ANALYSIS

Neb. Rev. Stat. § 25-1030.02 (Reissue 1989) provides in pertinent part:

> If it shall appear upon the trial of the liability of the garnishee that the garnishee was (1) indebted to the defendant, or (2) had any property or credits of the defendant, in his possession or under his control *at the time of being served with the notice of garnishment*, he shall be liable to the plaintiff, in case judgment is finally recovered by plaintiff against the defendant, to the full amount thereof, or to the amount of such indebtedness or property held by the garnishee.

(Emphasis supplied.)

We have held that the claim of a judgment creditor garnishor against a garnishee can rise no higher than the claim of the garnishor's judgment debtor against the garnishee. See *Action Heating & Air Cond. v. Petersen*, 229 Neb. 796, 429 N.W.2d 1 (1988). We have also held that a garnishee's liability is to be determined as of the time of the service of the summons in garnishment. *Chicago, B. & Q. R. Co. v. Van Cleave*, 52 Neb. 67, 71 N.W. 971 (1897). Accordingly, in determining the liability of a garnishee to a garnishor, the test is whether, as of the time the summons in garnishment was served, the facts would support a recovery by the garnishor's judgment debtor against the garnishee. See, *Action Heating & Air Cond. v. Petersen, supra*; *Darr v. Long*, 210 Neb. 57, 313 N.W.2d 215 (1981); *Chicago, B. & Q. R. Co. v. Van Cleave, supra*.

As reflected in part III, by the time the garnishment summons and interrogatories were served on Eriksen Construction, the work under the change order was completed and payment therefor made to Eriksen Construction. Thus, absent any defense, counterclaim, or setoff, the facts support a recovery by Jorgensen against Eriksen Construction.

Eriksen Construction urges that it owed Jorgensen nothing when it received the garnishment summons because of backcharges attributable to unsatisfactory work done by Jorgensen for which it had paid Jorgensen in full, to backhoe rental and damage thereto, and to liquidated damages to be assessed by the county in the future. Therefore, it becomes necessary to examine whether Eriksen Construction proved that as of July 28, 1993, it was entitled to a setoff and properly exercised that right against any amount otherwise due and owing to Jorgensen.

### 1. REQUIREMENTS FOR SETOFF

Neb. Rev. Stat. § 25–812 (Reissue 1989) provides that a "defendant may set forth in his answer as many grounds of defense, counterclaim, and setoff as he may have." Neb. Rev. Stat. § 25–816 (Reissue 1989) also provides that a "setoff can only be pleaded in an action founded on contract, and must be a cause of action arising upon contract . . . ." These statutes illustrate the statement in Stephen L. Sepinuck, *The Problems*

*With Setoff: A Proposed Legislative Solution*, 30 Wm. & Mary L. Rev. 51 (1988), that state statutes do not specify the acts a creditor must take to exercise setoff rights. However, a review of the case law reveals some general rules concerning the right of setoff and how one must exercise the right in order to maintain it against a garnishor.

Usually, courts have prohibited setoff when the debt owed is immature, contingent, or unliquidated. Sepinuck, *supra*. Generally, in order to be available as a setoff, a claim or demand of a garnishee against a judgment debtor must be due and owing the garnishee at the commencement of the action. See, *Crocker–Citizens Nat. Bank v. Control Metals Corp.*, 566 F.2d 631 (9th Cir. 1977); *American Surety Co. v. City of Akron*, 95 F.2d 966 (6th Cir. 1938); *Termini v. Arthur Exhibitions*, 9 Misc. 2d 557, 169 N.Y.S.2d 584 (1957), *aff'd* 5 App. Div. 2d 973, 173 N.Y.S.2d 243 (1958); *Mattek v. Hoffmann*, 272 Wis. 503, 76 N.W.2d 300 (1956); *Petition of Keyser*, 98 N.H. 198, 96 A.2d 551 (1953); *Bagdasarian v. Gragnon*, 31 Cal. 2d 744, 192 P.2d 935 (1948); *Bridgeport–City Trust Co. v. Niles–Bement–Pond Co.*, 128 Conn. 4, 20 A.2d 91 (1941); *Com. Tr. Co. of Pittsburgh's Appeal*, 324 Pa. 161, 188 A. 200 (1936); *Old First Natl. Bank & Trust Co. v. Snouffer*, 99 Ind. App. 325, 192 N.E. 369 (1934); *Hayes, Admr. v. Hayes*, 2 Del. Ch. 191 (1859).

As a general matter, courts prohibit setoff when the debt owed the one effecting setoff is contingent. See, *Termini v. Arthur Exhibitions, supra*; *Johnson v. Dutch Mill Dairy, Inc.*, 237 Minn. 117, 54 N.W.2d 1 (1952); *Walker v. Carolina Mills Lumber Co., Inc.*, 429 So. 2d 1065 (Ala. Civ. App. 1983); *Countiss v. Whiting*, 306 Ill. App. 548, 29 N.E.2d 277 (1940); *Mitchell v. Sears Roebuck & Co.*, 76 Ohio L. Abs. 178, 145 N.E.2d 570 (1957).

Most jurisdictions follow the rule that an unliquidated claim cannot be set off against a liquidated claim. See, *McGuire v. Gerstley*, 204 U.S. 489, 27 S. Ct. 332, 51 L. Ed. 581 (1907); *Webber v. Johnson*, 342 Mass. 455, 174 N.E.2d 40 (1961); *Johns–Manville v. Connelly*, 144 W. Va. 498, 108 S.E.2d 836 (1959); *Lehigh &c Co. v. Company*, 89 N.H. 274, 197 A. 410 (1938); *Kortz v. Union Cent. Life Ins. Co.*, 264 Ky. 750, 95

S.W.2d 611 (1936); *Kress v. Central Trust Company*, 153 Misc. 397, 275 N.Y.S. 14 (1934), *aff'd* 246 App. Div. 76, 283 N.Y.S. 467 (1935); *In re Estate of Nairn*, 215 Iowa 920, 247 N.W. 220 (1933); *Mack v. Hugger Bros. Const. Co.*, 153 Tenn. 260, 283 S.W. 448 (1925); *Suhs v. Homewood Rice Land Syndicate*, 128 Ark. 19, 193 S.W. 271 (1917); *Tidewater Quarry Co. v. Scott*, 105 Va. 160, 52 S.E. 835 (1906).

It is worth noting, however, that the bankruptcy code creates exceptions to the foregoing rules, as it provides for the estimation of immature, contingent, and unliquidated debts. 11 U.S.C. §§ 101(5)(A) and 502(c) (1988 & Supp. V 1993). Nonetheless, our case law is consistent with the general rules recited above. The party who pleads a setoff bears the burden of proving it. *Home Fed. Sav. & Loan v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993); *Heusser v. McAtee*, 151 Neb. 828, 39 N.W.2d 802 (1949); *Citizens Nat. Bank v. Rawley*, 131 Neb. 10, 267 N.W. 151 (1936). See, also, *Carlson v. Nelson*, 204 Neb. 765, 285 N.W.2d 505 (1979), *modified* 205 Neb. 483, 288 N.W.2d 489 (1980). A counterclaim, setoff, or cross-petition, to be available as a matter of affirmative defense or affirmative relief, must be a claim upon which the defendant could, at the date of the commencement of the plaintiff's suit, have maintained an action on the defendant's part against the plaintiff. *Weller v. Putnam*, 184 Neb. 692, 171 N.W.2d 767 (1969); *American Gas Construction Co. v. Lisco*, 122 Neb. 607, 241 N.W. 89 (1932); *Bank of Crab Orchard v. Myers*, 120 Neb. 84, 231 N.W. 513 (1930); *Gurske v. Kelpin*, 61 Neb. 517, 85 N.W. 557 (1901); *Simpson v. Jennings*, 15 Neb. 671, 19 N.W. 473 (1884).

A setoff is a debt for which an action might be maintained by the defendant against the plaintiff, that is, a debt for a certain specific pecuniary amount, recoverable in an action "ex contractu." *Simpson v. Jennings, supra.* The claim must be such that at the date of the commencement of the plaintiff's suit, the defendant could have maintained an action against the plaintiff. See *id.*

How one exercises the right of setoff is less defined. However, most jurisdictions require some overt or positive act to effect a setoff; the courts have not specified what conduct

will suffice. Sepinuck, *supra*. The U.S. Court of Appeals for the Sixth Circuit is the one exception. That court held in *Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir. 1975), that in the banking context, "setoff is not complete until three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff and (3) some record which evidences that the right of setoff has been exercised." We adopted the Sixth Circuit's rule, writing in *United Seeds v. Eagle Green Corp.*, 223 Neb. 360, 363, 389 N.W.2d 571, 574 (1986): "There must first be an intent and decision to exercise the right to set off, a subsequent action which completes the setoff, and finally a record which verifies that the action has been taken."

In *United Seeds*, the garnishor had obtained a judgment against the debtor and served a garnishment summons upon the debtor's bank in an attempt to garnish the debtor's account. Following the bank's claim that it was not indebted to the debtor, the garnishor filed an application to determine the bank's liability. Judgment was rendered against the bank, and the bank appealed.

The debtor maintained a checking account with a bank that held three promissory notes issued by the debtor. Two of the notes were due and owing, and the debtor had authorized the bank to apply funds from the debtor's checking account in payment for the mature promissory notes; however, the debtor explained that the payment would cause cash–flow problems. The bank agreed to honor outstanding and unpresented checks issued by the debtor, and the debtor continued to make deposits to and draw on the account.

On appeal, the bank claimed that its debit against the debtor's checking account constituted a valid setoff against a general deposit of the debtor of the matured debt owed it by the debtor.

In affirming the judgment in favor of the garnishor in *United Seeds*, we observed that the mere retrospective declaration of an intent to exercise a setoff does not establish a setoff. See *In re Archer*, 34 B.R. 28 (N.D. Tex. 1983). We concluded that the bank's bookkeeping entries regarding the debtor's checking account were consistent with an intent to set off, but that the bank's willingness to honor the debtor's overdrafts indicated

that the bank was secure about its depositor's ability to repay its outstanding notes. We further reasoned that the trial court must have found that the claimed setoff was precipitated by the imminent garnishment, that the agreement to honor the debtor's overdrafts was an agreement to allow the debtor full use of its deposits while circumventing the garnishment statutes, and that such an agreement was inconsistent with an intent to exercise the right of setoff.

Like *United Seeds*, *Baker v. National City Bank of Cleveland*, *supra*, concerned an attempted garnishment of a depositor's checking account to which the bank claimed a setoff for loan indebtedness. In *Baker*, the trial court ordered the bank to rescind the setoff and credit the depositor's account, and the bank appealed. The Sixth Circuit held that the bank's nonjudicial setoff was ineffective because the bank had taken no affirmative step to assert such a setoff as of the effective time of a court order enjoining such setoffs in a reorganization proceeding.

The *Baker* opinion restricted its analysis to setoffs by banks, framing the issue as: "What requirements must a bank meet in order to effect a non–judicial setoff against the account of a customer?" 511 F.2d at 1017. It concluded:

> It would be unrealistic to hold that mere intra–mural declarations between employees of a bank, accompanied by no affirmative acts and no steps to record the transaction, are sufficient to effectuate a setoff. The business of banks is carried on, in the main, by making entries in records rather than by the transfer of money. It is a business of debits and credits. To permit a bank to effect a setoff against a customer's account by means of mere conversations among bank personnel would seriously undermine confidence in the banking system. Further, to permit the consequences of a critical order of a court of competent jurisdiction in reorganization proceedings to be evaded on the basis of the proof in this record would be detrimental to orderly legal processes.

511 F.2d at 1019.

But whether in the banking context or otherwise, setoff encourages equitable and economically efficient business

transactions and avoids multiplicity of actions. Stephen W. Schwab et al., *Onset of An Offset Revolution: The Application of Set–Offs in Insurance Insolvencies*, 95 Dick. L. Rev. 449 (1991). It has been recognized as a substantive right designed to avoid the injustice of requiring a debtor to pay the full measure of his obligation while receiving only a portion of the amount owed to him. *Id.* In the contemporary business world, setoff promotes economy of time and efficiency of method in resolving debt between parties. *Id.*

As a matter of common sense, in no context should one be compelled to pay today what one will be entitled to recover tomorrow. In sum, setoff can be said to further the two public policies that are commonly known as fairness and commercial necessity. *Id.*

> Nevertheless, one must recognize that setoff is an extremely powerful tool—a tool, which even if exercised properly, may injure the other party. The best example of this tendency is in a bank's use of setoff against a depositor.
>
> When a bank sets off funds in a depositor's checking account against a debt owed it by that depositor, the bank is likely to dishonor any outstanding checks drawn on that account. If the debtor is a merchant, such dishonor may cause suppliers to cease delivering goods necessary to the depositor's business or may cause utility companies to discontinue essential services. Requiring prior notice of setoff might eliminate these effects . . . .
>
> Requiring the bank to give contemporaneous notice of its action to the depositor cannot eliminate injury. Yet, such notice might reduce the amount of injury while costing the bank (or other party effecting setoff) little or nothing in money, time, and effort. Presumably for this reason, at least one state has statutorily required banks and savings and loan associations to notify depositors of setoff within one day following its exercise. Moreover, article 9 of the Uniform Commercial Code requires notice in an analogous situation.

Stephen L. Sepinuck, *The Problems With Setoff: A Proposed Legislative Solution*, 30 Wm. & Mary L. Rev. 51, 64–65 (1988).

Yet, in dealing with when a depositor's account is subject to setoff, neither Neb. U.C.C. § 4–303 (Reissue 1992) nor its counterpart, Uniform Commercial Code § 4–303, 2B U.L.A. 269 (1991), as proposed by the American Law Institute and the National Conference of Commissioners on Uniform State Laws, specifies how a bank "exercises" a setoff. Thus, the method by which a bank is to exercise its rights of setoff is no more to be found in the Uniform Commercial Code than is it to be found in §§ 25–812 and 25–816.

It is instructive to note, as did the court in *Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1017 (6th Cir. 1975), that the U.S. Supreme Court has characterized a setoff as, broadly speaking, representing " 'the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other. That right is constantly exercised by business men *in making book entries* whereby one mutual debt *is applied* against another. . . .' " (Emphasis in original.) See *Studley v. Boylston Bank*, 229 U.S. 523, 33 S. Ct. 806, 57 L. Ed. 1313 (1913).

The reasoning in both *Baker* and *United Seeds v. Eagle Green Corp.*, 223 Neb. 360, 389 N.W.2d 571 (1986), regarding the need for affirmative attestation to the exercise of a setoff is equally compelling within the general business community as it is to banks. In essence, a bank and depositor share the same debtor–creditor relationship as any other party indebted to another in other contexts. Moreover, we have neither been cited to, nor do we find, any authority which distinguishes a bank setoff from setoffs in general. Therefore, it is consistent to extend the requirements for maintaining a setoff as announced in *Baker* and *United Seeds* to other setoffs, and we hereby so do.

### 2. Eriksen Construction's Failures

Eriksen Construction failed to prove that as of the time it was served with the summons in garnishment, it had exercised any right of setoff it might have had against Jorgensen. If for no other reason, this is so because there is no record which evidences that Eriksen Construction had by that time made any book entry which applied monies then due Eriksen Construction

from Jorgensen to monies Eriksen Construction then owed Jorgensen.

## V. JUDGMENT

Accordingly, as first noted in part I, the judgment in favor of Eriksen Construction must be, and hereby is, reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

LANPHIER, J., dissenting.

Davis Erection sought to garnish county funds held by Eriksen Construction allegedly due to Jorgensen for work performed by Jorgensen and its subcontractor Davis Erection. Davis Erection had obtained a default judgment against Jorgensen after Jorgensen failed to pay it under its contract with Davis. Eriksen Construction resisted the garnishment on the basis that it did not owe Jorgensen anything due to Jorgensen's failure to perform.

Garnishment is a legal, not an equitable, remedy. The factual findings of a trial court in a law action tried without a jury have the effect of a finding by a jury and, on appeal, will not be set aside unless clearly wrong. *Otoe Cty. Nat. Bank v. Froelich*, 234 Neb. 1, 448 N.W.2d 917 (1989). The district court's finding that the garnishee, Eriksen Construction, was not presently indebted to the judgment debtor, Jorgensen, should be upheld.

"Garnishment in aid of execution of a judgment is proper in Nebraska only when the garnishee has property of and is indebted to the judgment debtor." *Darr v. Long*, 210 Neb. 57, 61, 313 N.W.2d 215, 217–18 (1981). See Neb. Rev. Stat. § 25-1056 (Reissue 1989). A judgment creditor's claim in garnishment can rise no higher than that of his debtor. *Action Heating & Air Cond. v. Petersen*, 229 Neb. 796, 429 N.W.2d 1 (1988); *Darr v. Long, supra*; *Certain-teed Products Corp. v. Carlisle*, 156 Neb. 185, 55 N.W.2d 489 (1952). If the debtor has a right of action in garnishment against the garnishee, so does the creditor, but not otherwise. *Action Heating & Air Cond. v. Petersen, supra*; *Darr v. Long, supra*. A proceeding in

garnishment is effectively an action by a debtor in the plaintiff–creditor's name against the garnishee. *Darr v. Long, supra*. The test in determining liability of the garnishee to the garnishor–plaintiff is whether or not the facts would support a recovery by the principal defendant against the garnishee. *Action Heating & Air Cond. v. Petersen, supra*.

In this case, the garnishee had no present indebtedness to the judgment creditor which was subject to garnishment. Since Jorgensen was in default of its contract, the amount that Eriksen Construction owed, if any, to Jorgensen was indeterminable. The trial court could not conclude that Eriksen Construction was indebted to Jorgensen, and therefore the county funds held by Eriksen were not subject to garnishment.

In *Certain-teed Products Corp. v. Carlisle, supra*, we addressed the ability of a creditor to garnish the amounts allegedly due a debtor–subcontractor from a general contractor. The general contractor had paid the subcontractor some $20,000 pursuant to the contract calling for a total payment of approximately $24,000. The unpaid $4,000 was recorded as a credit balance on the general contractor's books. The general contractor had not paid the remaining $4,000 pursuant to a contract term stating that it was not liable to the subcontractor for payment in excess of the amount which the contractor received from the owner. The general contractor had received only $20,000 from the owner. We held that the $4,000 credit balance did not represent a present indebtedness which the general contractor owed the subcontractor despite the fact that it was recorded on the books. The liability of the garnishee–general contractor to the subcontractor was contingent on the collection of money from the owner. Therefore, the debt was not subject to garnishment.

In *Action Heating & Air Cond. v. Petersen, supra*, a subcontractor attempted to garnish the unpaid balance that the project owner owed the general contractor. In their answers to the garnishment interrogatories, the project owners admitted $9,600 was due under the terms of the contract. However, the owners denied that there was any debt owing to the general contractor because the contractor had failed to perform. The contract required the general contractor to pay for labor and

material costs, which he had failed to do. In fact, it was one of the unpaid subcontractors who attempted to garnish the unpaid balance. We held that since the general contractor had failed to comply with the contract, the garnishee–owners were not indebted to the general contractor. Therefore, the subcontractor was not entitled to garnish the funds held by the project owners.

As of July 28, 1992, the date Eriksen Construction was served with the garnishment summons, any amount it owed Jorgensen was uncertain and contingent. The county had yet to accept the project, liquidated damages were possible, backhoe rental was due, back charges were possible, etc. With these facts, the district court correctly held that there was no present debt owing Jorgensen that was subject to garnishment.

In its application to determine liability of the garnishee, appellant Davis Erection argued that Eriksen Construction had no right of setoff. The majority opinion accepts Davis Erection's characterization of Eriksen Construction's defense to the garnishment as the assertion of a right of setoff. The majority then analyzes the matter in terms of whether Eriksen Construction was entitled to a setoff against Jorgensen and whether it properly exercised that right.

As the cases cited by the majority correctly indicate, a setoff is a claim filed by a defendant against the plaintiff when sued and in which he seeks to cancel the amount due from him with a debt that the plaintiff owes the defendant. See, *Weller v. Putnam*, 184 Neb. 692, 171 N.W.2d 767 (1969); *American Gas Construction Co. v. Lisco*, 122 Neb. 607, 241 N.W. 89 (1932); *Bank of Crab Orchard v. Myers*, 120 Neb. 84, 231 N.W. 513 (1930); *Gurske v. Kelpin*, 61 Neb. 517, 85 N.W. 557 (1901); *Simpson v. Jennings*, 15 Neb. 671, 19 N.W. 473 (1884).

Eriksen Construction did not attempt to setoff a claim or debt that Jorgensen owed to it in order to cancel out any amount it owed Jorgensen. Eriksen Construction's answer to the garnishment interrogatories did not assert any right to setoff. Its answer, and all of its subsequent pleadings and arguments, simply assert that there was no debt owed due to Jorgensen's failure to perform. There is no setoff. Setoff should not be in issue.

The majority concludes that Eriksen Construction failed to

prove that as of the time it was served with the summons in garnishment that it had exercised any right of setoff it might have had against Jorgensen. In light of the holdings of *Action Heating & Air Cond.* and *Certain-teed Products Corp.*, the findings of the district court should be affirmed on the basis that no debt was owed, rather than be reversed using setoff principles which are inapplicable.