IN RE ESTATE OF EUGENIA A. PETERSON, DECEASED.
CARL A. PETERSON, APPELLANT, V. JAMES E. ABBOTT AND
LEROY ABBOTT II, COPERSONAL REPRESENTATIVES OF THE
ESTATE OF EUGENIA A. PETERSON, DECEASED, APPELLEES.

381 N.W.2d 109

Filed February 7, 1986.    No. 84-706.

Clark G. Nichols of Winner, Nichols, Douglas and Kelly, for appellant.

Robert W. Mullin of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Eugenia A. Peterson died February 5, 1983. A petition for formal probate of her will was filed in the county court for Scotts Bluff County, Nebraska, and the will was admitted to probate on March 22, 1983. Decedent's husband, Carl Peterson, filed a "Petition for Elective Share" in the probate proceedings in that court on August 3, 1983, in which he elected "pursuant to Nebraska Probate Code Section 30-2317 to take one-half of the augmented estate of the decedent." The copersonal representatives of decedent's estate, decedent's two sons from her previous marriage to LeRoy Abbott, filed an answer to the petition for elective share, asserting that an antenuptial agreement executed by Carl and Eugenia barred Carl's claim. Carl replied to the answer, alleging that the antenuptial agreement was void, asserting, inter alia, that there was fraud and overreaching in the execution of the antenuptial agreement and that, in any event, such an agreement applied to real property only and not to personal property.

After a pretrial conference the county court issued a pretrial order bifurcating the trial. The first part of the trial was to determine whether Carl was entitled to an elective share, and if it was so determined, the second part of the trial would be used to determine the amount of the share. In regard to the procedure, at the beginning of the trial the court stated:

> [B]asically that [the pretrial order] states that . . . it is the estate's right and obligation to go forward first with the evidence to present the existence of a valid antenuptial or prenuptial agreement and, then, the evidence for the Contestant, Mr. Carl Peterson, would be permitted in opposition thereto, and that any rebuttal evidence then would be taken up at that time.
>
> So it would be the opinion of the Court that estoppel or waiver or that type of evidence would not be germane until having heard the evidence Mr. Peterson may present.

At trial the estate, as set out in the court's journal entry, "presented evidence of the antenuptial agreement, the execution of the Agreement and related matters whereupon the Estate rested reserving the right to present rebuttal evidence of estoppel. The Contestant [Carl Peterson] then presented evidence in opposition to the antenuptial agreement and rested . . . ." After Carl rested, the estate offered no rebuttal evidence and then moved to dismiss "on the basis that there was insufficient evidence to support a finding that the antenuptial agreement was invalid." The court sustained the motion to dismiss.

Carl Peterson timely appealed to district court. The district court affirmed the county court order dismissing Carl's petition for elective share, "[f]inding no error on the record." Carl timely appeals to this court and assigns 14 errors. The assignments may be grouped into four. First, appellant alleges that the antenuptial agreement was invalid on several grounds, including improper execution and insufficient disclosure of assets and fraud committed by Eugenia in connection with the antenuptial agreement. Second, appellant urges that the county court erred in holding that the burden of proof was on Carl to show the invalidity of the agreement. Third, the county court erred in failing to find that Neb. Rev. Stat. § 30-106 (Reissue 1964) controlled as to the validity and extent of the agreement. Fourth, the county court erred in finding that Carl was estopped from denying the validity of the agreement.

The standard of review by this court is for errors appearing on the record. Neb. Rev. Stat. § 25-1911 (Reissue 1979); *In re Estate of Casselman*, 219 Neb. 653, 365 N.W.2d 805 (1985); *In*

*re Estate of Massie*, 218 Neb. 103, 353 N.W.2d 735 (1984). The evidence before the county court shows the following.

When they met, Carl Peterson and Eugenia Abbott were each single. Carl had been divorced and Eugenia's first husband had died. Each had children, all of whom were adults at the time of these proceedings. Eugenia and Carl were married on July 25, 1969, and executed an antenuptial agreement 2 days before their marriage. The agreement had been prepared by Eugenia's lawyers and was brought to Eugenia's house by Paul Hefti, the president of the Guardian State Bank of Alliance, Nebraska. The agreement was signed by both parties, and both acknowledged their signatures before Hefti, who was a notary public. Hefti had died before the date of the proceedings herein. The Guardian State Bank was the executor of the estate of Eugenia's first husband, LeRoy Abbott, and handled the trusts set up in LeRoy Abbott's will.

Although Carl and Eugenia jointly held some property during their marriage, they generally kept their financial matters separate. Based upon the sale of his ranch in 1973, Carl's net worth in 1969 when the antenuptial agreement was signed was approximately $250,000. Eugenia's net worth at that time included approximately $215,868.53 of personal property and an interest in the LeRoy Abbott estate, in which she had a power of appointment over approximately one-half of the adjusted gross estate of approximately $10 million. Inter vivos gifts from Eugenia to Carl during the marriage included a house in Scottsbluff, a condominium in Hawaii, and approximately $200,000 in tax-exempt bonds. Carl was bequeathed $200,000 in cash in Eugenia's will.

Initially, Carl asserts that the county court erred in putting the burden on Carl to prove the invalidity of the antenuptial agreement. We have held that the burden of proof regarding the validity of an antenuptial contract is on the party asserting its invalidity. *Moss v. Stueven*, 200 Neb. 215, 263 N.W.2d 98 (1978); *Strickland v. Omaha Nat. Bank*, 181 Neb. 478, 149 N.W.2d 344 (1967); *Caprette v. Spieth*, 181 Neb. 11, 146 N.W.2d 746 (1966). The county court, therefore, did not err in placing the burden on Carl to show the invalidity of the antenuptial agreement. It was incumbent upon Carl to show the

fraud and overreaching that he alleged in claiming that the agreement was invalid.

Insofar as Carl contends that the county court should have accepted as true all of his evidence and all the reasonable inferences from that evidence because his petition was dismissed at the conclusion of his evidence, the posture of this case does not support Carl's conclusion. Carl's premise is that the county court sustained a motion to dismiss his case at the conclusion of his evidence. In reality, the county court heard all the evidence on the issue of the validity of the antenuptial agreement. The court required the estate to go forward initially with the estate's evidence on the existence and execution of a valid antenuptial agreement. Carl then adduced evidence on the question of the validity of the agreement and rested. The estate did not adduce further evidence and moved for dismissal of Carl's claim resting on the invalidity of the agreement—in effect, at the end of this phase of the case. The court treated this as a submission of the case on the point and found in part as follows:

(1) The formalities of the statutes were met in the execution of the antenuptial contract.

(2) Both husband and wife possessed substantial assets at the time of execution of the contract, although the wife's assets were proportionally much larger.

(3) The disclosure by the wife was full, fair and open disclosure in the contract. The Court finds evidence presented by the husband that Exhibit A was not attached at the time of execution to be unconvincing.

(4) The contract does not appear to be unjust or unreasonable on its face, and does include full, fair and open disclosure. Therefore no presumption of fraud arises. The burden of proof does not shift to the estate to prove validity of the contract. The burden of proof remains on the husband to show invalidity of the antenuptial contract.

(5) There is no evidence of fraud or overreaching in this matter.

Our review of the record leads us to the conclusion that the evidence fully supports the findings of the county court. Carl's

first attack on the agreement is that there was not a full disclosure by Eugenia of her assets at the time of the agreement.

Carl testified that he basically understood the purpose of the antenuptial agreement. He further testified that he had no specific knowledge of the extent of Eugenia's wealth but that he generally knew that it was substantial. His position rests primarily on his contention that "EXHIBIT 'A' " (the inventory in the LeRoy Abbott estate) was not attached to the antenuptial agreement when he signed it. Carl's testimony so indicated. He testified that the agreement he signed consisted of only six pages, the last page being the page on which he signed.

The estate asserts that the evidence shows that the agreement had "EXHIBIT 'A' " attached when signed by Carl. The exhibit detailed Eugenia's holdings and her interest in the estate of LeRoy Abbott. That interest primarily consisted of the marital deduction trust, of which Eugenia was a beneficiary and over which she had a testamentary, general power of appointment.

The antenuptial agreement recited, "A copy of the inventory of the [LeRoy Abbott] estate, together with a stipulation between the executor and the county attorney for Box Butte County, Nebraska, tentatively fixing the value thereof, is annexed hereto, and marked EXHIBIT 'A'." The inventory showed a total gross estate value of $10,239,847.90. Other recitals in the agreement which Carl admitted signing stated that Eugenia had the "power of appointment over approximately a fractional one-half of his [LeRoy's] adjusted gross estate . . . ." The antenuptial agreement also recited, "Each of the parties acknowledges that the other party has fully acquainted him with his means and resources; . . . and that he is entering into this agreement freely, voluntarily and with full knowledge."

We have held that recitals in a contract have a limited value in the construction of a contract. *McKinnon v. Baker*, 220 Neb. 314, 370 N.W.2d 492 (1985). Recitals, however, may be looked to "in determining the proper construction of the contract or the intention of the parties." *Strickland v. Omaha Nat. Bank*, 181 Neb. 478, 484, 149 N.W.2d 344, 351 (1967). The recitals in the antenuptial agreement could properly be considered by the

trial court in determining the extent of Carl's knowledge at the time he signed the agreement.

Carl testified that he merely "thumbed through" the agreement and that he had no knowledge that the agreement was to include "EXHIBIT 'A'." The law has long been that a person who signs a contract without reading it cannot later relieve himself of its burdens. *Smith v. Ganz*, 219 Neb. 432, 363 N.W.2d 526 (1985); *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983).

Further testimony showed that three copies of the agreement were signed; that one copy was kept at the office of Lester Danielson, Eugenia's attorney, who had died prior to these proceedings. Two copies were kept by Eugenia. All were found after Eugenia's death, with the exhibit attached. Mr. Danielson's secretary of more than 17 years had prepared the documents and testified to her office procedures followed in all cases. That procedure required that exhibits to documents be attached before documents were signed. An attorney who reviewed the agreement with both Carl and Eugenia in 1972 testified that "EXHIBIT 'A' " was attached at the time of his interview with Carl and Eugenia and that its contents were discussed with both of the parties.

If "EXHIBIT 'A' " was attached to the agreement, Carl's basic argument that there was not sufficient disclosure fails. As set out above, that exhibit disclosed the extent of LeRoy Abbott's assets at the time of his death and Eugenia's rights to such assets. As stated in *In re Estate of Hill*, 214 Neb. 702, 707, 335 N.W.2d 750, 753 (1983):

> "Fair disclosure contemplates that each spouse should be given information, of a general and approximate nature, concerning the net worth of the other. Each party has a duty to consider and evaluate the information received before signing an agreement since they are not assumed to have lost their judgmental faculties because of their pending marriage."

Additionally, aside from the agreement, Carl knew generally of Eugenia's financial situation. Carl had known LeRoy Abbott for 10 years before LeRoy Abbott's death, and in response to a question as to his knowledge about Abbott's

estate, if he "knew there was a substantial amount of wealth that she had some interest in," Carl answered, "Yes. It was common knowledge."

We hold that the trial court was correct in finding that Carl was given a fair disclosure of Eugenia's assets at the time of the agreement.

The remaining question to be resolved is whether § 30-106 (Reissue 1964) or Neb. Rev. Stat. § 30-2316 (Reissue 1979) is to be applied in determining the validity and effect of the antenuptial agreement. Section 30-106 (Reissue 1964) was in effect at the time the agreement was executed in 1969 and provided in part: "A man or woman may also bar his or her right to inherit part or all of the lands of his or her husband or wife by a contract made in lieu thereof before marriage." At the time of Eugenia's death in 1983, § 30-2316 (Reissue 1979) of the Nebraska Probate Code was in effect, and § 30-106 (Reissue 1964) had been repealed.

Carl contends that § 30-106 (Reissue 1964) applies, that that statute, by its clear terms, makes an antenuptial agreement applicable only to "lands," and that, therefore, even if the antenuptial agreement is valid, it operates only to prevent Carl's election to take a spouse's share of real property, and does not apply to prevent Carl from claiming an elective share of the personal property in Eugenia's estate.

Section 30-2316 (Reissue 1979), on the other hand, provides that the parties to a valid antenuptial agreement may waive the right to elect a share of both real and personal property of a deceased spouse.

We note that the estate contends that, even if applicable, § 30-106 (Reissue 1964) has been construed by this court to mean that an antenuptial agreement executed when such statute was in effect could preclude a surviving spouse from an elective share in both real and personal property. See, *Kingsley v. Nobel*, 129 Neb. 808, 263 N.W. 222 (1935); *Anderl v. Willsey*, 193 Neb. 698, 229 N.W.2d 46 (1975); *Moss v. Stueven*, 200 Neb. 215, 263 N.W.2d 98 (1978). Carl contends that in a series of cases culminating in *Grassman v. Jensen*, 183 Neb. 147, 158 N.W.2d 673 (1968) (White, C.J., concurring in the result in part and dissenting in part), and later in *Blanchard v. White*, 217

Neb. 877, 351 N.W.2d 707 (1984), this court has indicated that § 30-106 (Reissue 1964) applies only to real property, and not to personal property. In view of the manner in which this case is disposed of, we need not determine that issue.

The dispute is clear. As stated above, Carl contends that since § 30-106 (Reissue 1964) was in effect on July 23, 1969, when the antenuptial agreement was signed, the provisions of that statute were incorporated into the agreement, and the terms of § 30-106 (Reissue 1964) control the effect of the agreement. The estate contends that since § 30-2316 (Reissue 1979) was in effect on February 5, 1983, when Eugenia died, the terms of § 30-2316 (Reissue 1979) control the effect of the antenuptial agreement. We hold that § 30-2316 (Reissue 1979), the statute that was in effect at the time of the death of Eugenia, controls.

In considering the problem, we are necessarily guided by the general rules of inheritance of Nebraska. As stated in *In re Estate of Luckey. Bailey v. Luckey*, 206 Neb. 53, 57, 291 N.W.2d 235, 238 (1980):

> The right of inheritance is created by statute. It is within the power of the legislature to determine what persons or whether any person shall inherit from one who dies intestate, and to determine what proportion of the decedent's estate shall descend to any particular person or class of persons. The legislature creates and may take away the right to inherit.

Within that general rule the Legislature has set out both the right of surviving spouse to elect to take an elective share of a deceased spouse's estate (Neb. Rev. Stat. § 30-2313 (Cum. Supp. 1984)) and the right of spouses to waive such a right by contract (§ 30-2316 (Reissue 1979)).

Section 30-2313 (Cum. Supp. 1984) provides in part: "If a married person domiciled in the state dies, the surviving spouse has a right of election to take an elective share in any fraction not in excess of one half of the augmented estate under the limitations and conditions hereinafter stated."

The "augmented estate" referred to in § 30-2313 (Cum. Supp. 1984) is defined in Neb. Rev. Stat. § 30-2314 (Cum. Supp. 1984) in detail, and includes many items which are to be added to the basic estate.

Section 30-2316 (Reissue 1979) provides in part:

> The right of election of a surviving spouse . . . may be waived, wholly or partially, before or after marriage, by a written contract, agreement or waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of all rights (or equivalent language) in the property or estate of a present or prospective spouse . . . is a waiver of all rights to elective share . . . and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession . . . .

Carl's position would give him all the rights of election under § 30-2313 (Cum. Supp. 1984), including his right to a share of the "augmented estate," but none of the burdens which he asserts are put on him by § 30-2316 (Reissue 1979).

As to which law controls, we held in *In re Estate of Enyart*, 100 Neb. 337, 349, 160 N.W. 120, 124 (1916), *overruled on other grounds, Kingsley v. Noble*, 129 Neb. 808, 263 N.W. 222 (1935): "There is no vested interest in a statute, and a change in the manner of disposition of estates of deceased persons may be made by the legislature at any time. The law at the time of death determines the right and manner of disposition, and not the former law."

Similarly, in 79 Am. Jur. 2d *Wills* § 69 at 327-28 (1975), it is stated:

> [T]he power of one spouse to bequeath property away from the other spouse and the rights of the surviving spouse upon his or her election not to take under the will are controlled by the law in force at the time of the testator's death and not by that in effect when the will was executed.

In 3 W. Whitford, Probate and Administration, *Descent and Distribution* 1155 (1957), it is set out, "The right of election is purely statutory, and the statute in force at the time of death controls, rather than the statute in force at the time an antenuptial contract was executed (or at some other time prior to death)."

In *In re Estate of Florey*, 212 Neb. 665, 671, 325 N.W.2d 643, 646-47 (1982), we said:

Our court has repeatedly held that the will of the deceased speaks as of the date of death of the testator. [Citations omitted.] The right of a surviving spouse to elect to receive those benefits provided by law in lieu of those provided by the will also must be determined by the law in effect at the date of the decedent's death. With the adoption of the new probate code, Neb. Rev. Stat. § 30-2901 (Reissue 1979) provides that the new code applies to any wills of decedents dying subsequent to the effective date of the code. The court must therefore look to the law in effect when the decedent died to determine the rights of the electing spouse.

Carl's answer to all these statements of law is that all these statements apply only to wills and that we are here considering an antenuptial contract, not a will. We hold, however, that the effect of the contract here involved—an antenuptial contract which removes the rights of both contracting parties to elect to share in each other's estate and in which the parties agree to be bound by present and future laws—must be determined by the statutes in effect at the time of the death of the party to the agreement whose estate is attempting to effectuate the agreement.

The provision of the antenuptial agreement in question provided in part:

3. Each party hereby waives, releases and relinquishes any and all claims and rights of every kind, nature or description that he may acquire by reason of the marriage in the other party's property or estate under the present or future laws of Nebraska or any other jurisdiction, including:

(a) The right to elect to take against any present or future last will and testament or codicil of the other party;

(b) The right to take his intestate share in the other party's estate; and

(c) The right, if any, to act as administratrix or administrator of the other party's estate.

The contract before us is an antenuptial agreement to become effective in the future and designed to control the rights of inheritance of both parties, and a contract in which the

parties have agreed specifically to be bound by future laws.

The law generally is that statutes in existence at the time of the execution of a contract become part of the contract as if set forth therein. *Faught v. Platte Valley Public Power & Irrigation Dist.*, 155 Neb. 141, 51 N.W.2d 253 (1952). A limitation of that general rule was set out in *Carlson v. Nelson*, 204 Neb. 765, 773, 285 N.W.2d 505, 509 (1979): "Existing statutes and laws with reference to which a contract is made (assuming there are no valid contractual provisions providing otherwise) enter into and become part thereof." See, also, *Goodwin v. Freadrich*, 135 Neb. 203, 215, 280 N.W. 917, 922 (1938), where it is stated that " 'the existing statutes . . . at the time a contract is made [become] a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a different intention.' " And as stated in *Board of Trustees v. Krizek*, 113 Ill. App. 3d 222, 226, 446 N.E.2d 941, 944 (1983): "Nothing prevents the parties to a contract from agreeing to be bound with reference to future laws [citations omitted] . . . ." See, also, 17 Am. Jur. 2d *Contracts* § 257 at 657-58 (1964), which states contracts are governed by the law in existence at the time it was made, "unless the parties have indicated an intention to the contrary, such as an intention to be bound by future laws." In this case Carl and Eugenia agreed to be bound by future laws.

The only right that Carl had in Eugenia's estate was the right to take a share of that estate contrary to the will itself. That right of election is purely statutory and is provided by § 30-2316 (Reissue 1979). The right of a surviving spouse to elect against a will is statutory only. Carl now says the antenuptial agreement was invalid insofar as it states that Carl gives up the right to share in Eugenia's personal property because, as Carl contends, § 30-106 (Reissue 1964) specifically provided that neither party can agree not to share in the personal property of his or her deceased spouse. Carl now wants to apply the provisions of that 1969 contract, including the statutes existing at that time and later repealed. Just as he has no vested right in any laws of inheritance, neither does Carl have a vested right to apply 1969 inheritance laws to a 1983 estate.

Carl also raises the question that by the terms of the current

Nebraska Probate Code itself, that code provides that it shall not impair any accrued right. Carl states, in his brief at 18, "The right of [Carl] to inherit personal property, or to elect against a will which denied him his statutory share of his wife's personal property, accrued at the time of the marriage."

No such right "accrued" at the time of the marriage. Carl, indeed, had no rights under § 30-106 (Reissue 1964) to elect or do anything else, after that statute was repealed in 1974. The will in question was not executed until 1982. When § 30-2313 (Reissue 1979) was made the law of this state, Carl received a right, by legislative grace, to choose to take a certain percentage of his deceased spouse's estate. Carl, however, had given up that right in a contract wherein he promised that he waived and released "any and all claims and rights of every kind . . . in the other party's property or estate under the present or future laws of Nebraska . . . including: (a) The right to elect to take against any present or future last will and testament or codicil of the other party . . . ."

In view of this disposition of the case, the assignment of error alleging that the trial court erred in finding that Carl was estopped to deny the validity of the contract need not be determined.

The judgment of the trial court was correct, and the judgment of the district court affirming that holding is correct.

AFFIRMED.