PROPERTIES INVESTMENT GROUP OF MID-AMERICA, A NEBRASKA PARTNERSHIP, ET AL., APPELLEES, V. APPLIED COMMUNICATIONS, INC., A NEBRASKA CORPORATION, APPELLANT.
495 N.W.2d 483

Filed February 19, 1993.    No. S-90-550.

Thomas J. Culhane, Linda W. Rohman, and Ruth Beyerhelm, of Erickson & Sederstrom, P.C., for appellant.

Thomas M. White, of Fitzgerald, Schorr, Barmettler & Brennan, for appellees.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and HOWARD, D.J., Retired.

FAHRNBRUCH, J.

Applied Communications, Inc. (ACI), appeals a trial court's holding that as a guarantor, ACI owes the appellees $294,733.71 for payments required under a lease that its subsidiary, JBA, Inc., failed to make for the rental of a commercial warehouse.

We affirm the judgment of the district court for Douglas County in favor of the appellees, Properties Investment Group of Mid-America (PIGOMA), a Nebraska partnership, and its owners, Dennis Jorgensen, Bruce W. Bisson, Charles L. Smith, Gary Tiller, and Craig A. Hergott (Individual Appellees).

## FACTS

In 1984, the Individual Appellees were the shareholders who owned all of the stock in JBA, Inc. (Old JBA). That corporation's principal business was the construction of housing for automatic teller machines. These same shareholders were also partners in PIGOMA, through which they purchased an Omaha commercial building. Commencing January 1, 1984, the building was leased to Old JBA for a 15-year period.

On or about April 3, 1984, Old JBA entered into an "Agreement for Sale and Purchase of Assets" (Agreement) with EFT, Inc., a subsidiary of ACI. Pursuant to § 2.4 of the

Agreement, EFT agreed to "assume, pay, perform and discharge the Liabilities" of Old JBA except for certain specified liabilities for such items as unpaid taxes, contingent liabilities, and liabilities owed by Old JBA to its shareholders, officers, and directors. The term "liabilities" is defined in the Agreement as "any indebtedness, obligation, contract, guaranty, endorsement, and liability of [Old JBA's] existing at the Closing Date."

Several additional documents were also dated April 3, 1984, including Old JBA's assignment of the lease to EFT, which was conditioned upon PIGOMA's consent and the release of Old JBA from further liability on the lease. The assignment contained a further condition that EFT would expressly assume all liability on the lease from and after the date of the assignment. PIGOMA signed a "Consent to Assignment and Release" in which it consented to Old JBA's assignment of the lease upon the condition that EFT "shall assume and agree to perform and to make all payments under and upon said Lease from and after April 1, 1984." EFT executed an "Acceptance of Assignment and Assumption" in which it agreed to make all payments under the lease "due and to become due from and after April 1, 1984." These documents dated April 3, 1984, along with a copy of the lease, were included at tab 10 of a large bound volume entitled "Purchase of Assets of JBA, Inc. by EFT, Inc." (exhibit 1).

Also executed on April 3, 1984, and included in exhibit 1 was a "Guaranty Agreement" in which ACI guaranteed to Old JBA *and its shareholders* "the full, prompt and satisfactory payment and performance of the Agreement and all other agreements and promissory notes required under the Agreement to be paid and performed by [EFT] in accordance with their respective terms and conditions." The Guaranty Agreement provided that "[t]he liability and obligation of Guarantor [ACI] under this Guaranty Agreement shall be absolute and unconditional and shall remain in full force and effect until [EFT's] liability to [Old JBA] and/or Shareholders has been completely discharged."

EFT subsequently changed its name to JBA, Inc. JBA, Inc., performed under the lease until October 1987. By letter dated

October 27, 1987, JBA, Inc., gave notice to PIGOMA that it intended to vacate the property. Thereafter, JBA, Inc., made no payments under the lease. On August 25, 1988, the district court for Douglas County entered a declaratory judgment that JBA, Inc., was in breach of the lease. On December 20, 1988, the court entered a partial summary judgment in favor of PIGOMA and against JBA, Inc., in the amount of $124,248.23, representing damages for rent, maintenance, and utility bills that had accrued under the lease through September 30, 1988. No appeal was taken from either of those partial summary judgments, and they became final. See *Properties Inv. Group v. JBA, Inc., ante* p. 439, 495 N.W.2d 624 (1993).

On January 12, 1990, in a third partial summary judgment, the trial court awarded PIGOMA $141,308.87, representing damages that had accrued between September 30, 1988, and September 30, 1989. The trial court again retained jurisdiction to ascertain and enter judgment for any damages accruing after September 30, 1989. The third partial summary judgment has been affirmed on appeal to this court. See *id.*

The lawsuit involved here against ACI was filed January 25, 1989. In it, in their first cause of action, PIGOMA and the Individual Appellees requested that judgment be entered declaring PIGOMA to be a third-party beneficiary of the Guaranty Agreement and therefore entitled to enforce and receive the benefits of its provisions. The appellees also requested that judgment be entered "on behalf of [PIGOMA] in the amount of its damages resulting from the breach of [the lease] and [the Acceptance of Assignment and Assumption] by ACI's wholly owned subsidiary [JBA, Inc.]."

In their second cause of action, the appellees requested the court to enter judgment declaring that the Individual Appellees, individually and collectively, are entitled to enforce and require ACI to perform under the Guaranty Agreement and to make payment to PIGOMA in the amount of its damages resulting from the breach by JBA, Inc., of the lease and the Acceptance of Assignment and Assumption.

After a bench trial, the district court entered a declaratory judgment finding, in part, that (1) EFT expressly agreed to

assume Old JBA's obligation under the lease through the assignment, consent, and acceptance documents found at tab 10 of exhibit 1; (2) ACI guaranteed " 'all agreements . . . <u>required or contemplated</u> by <u>said agreement</u> to be paid or performed by [EFT]' " (emphasis in original); (3) ACI has a vested interest and an economic concern in regard to the performance of all the parties; (4) the terms of the Guaranty Agreement are unambiguous when read in conjunction with the Agreement, tab 10, and the lease; (5) the language in the recitals of the Guaranty Agreement is "strong evidence of the parties['] intent when the promissory language is ambiguous"; (6) although PIGOMA and the Individual Appellees were not parties to the Guaranty Agreement, they are third-party beneficiaries of the contract; (7) the parties intended for the lease payments to be guaranteed by ACI; and (8) ACI is obligated to PIGOMA and the Individual Appellees on the Guaranty Agreement in regard to the lease in the amount of $294,733.71.

## ASSIGNMENTS OF ERROR

Condensed, ACI's assignments of error claim that the district court erred in concluding that (1) PIGOMA and the Individual Appellees could sue to enforce the terms of the Guaranty Agreement, (2) ACI is obligated under the lease through the Guaranty Agreement, (3) the several documents executed by the parties constituted one agreement, (4) the PIGOMA lease was assigned to and assumed by EFT by the terms of the Agreement, and (5) the Guaranty Agreement had not expired by its terms by the time EFT had defaulted on the lease. ACI also complains that the judgment of the trial court is not supported by the evidence and is contrary to law. Appellant has made no complaint as to the amount of the judgment.

## STANDARD OF REVIEW

An action for declaratory judgment under the provisions of Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1989) is sui generis. Whether such an action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. The essence of the dispute before us sounds in contract. That being so, the action is to be treated as one at law. *Perry v. Esch*, 240

Neb. 289, 481 N.W.2d 431 (1992).

In reviewing a judgment in a bench trial of a law action, an appellate court does not reweigh the evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Porter v. Smith*, 240 Neb. 928, 486 N.W.2d 846 (1992). In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Id.* When a declaratory judgment action presents questions of law, an appellate court has an obligation to reach its conclusions independent from the conclusions reached by the trial court with regard to these questions. See *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992).

## STANDING

The Guaranty Agreement was signed by George Haddix, president of ACI; Jorgensen as president of Old JBA; the Individual Appellees as shareholders of Old JBA; and by Neal Hansen, who had been given an ownership position in Old JBA immediately prior to the closing as compensation for "bringing some of the transaction together." The identical signatures are present on the Agreement.

ACI argues that (1) PIGOMA, as a partnership, is an entity separate from the individual partners; (2) Old JBA and PIGOMA were separate entities, despite sharing some common partners or shareholders; and (3) the individual partners signed the Agreement and the Guaranty Agreement as officers and shareholders of Old JBA, not as partners of PIGOMA. ACI claims that for these reasons, PIGOMA and the Individual Appellees were not parties to the Agreement or the Guaranty Agreement and may not sue to enforce the agreements' terms.

The district court agreed that "[PIGOMA and the Individual Appellees] are not parties to the guaranty." However, the court held that "[t]he creditor beneficiary contract arises when another person (promisor-ACI) promises the debtor (promisee-Old JBA, EFT etc[.]) to pay the debtors['] debt to the creditor (PIGOMA)."

In order for those not named as parties to a contract to recover thereunder as third-party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was made for them. *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686 (1992). We have stated that

> " '[a] third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and promisee. The right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, which must affirmatively appear from the language of the instrument when properly interpreted or construed; and the liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability. . . .' "

*Osmond State Bank v. Uecker Grain*, 227 Neb. 636, 639, 419 N.W.2d 518, 520 (1988).

The documents received in evidence reflect, by reasonable intendment, that the rights and interests of PIGOMA and the Individual Appellees were contemplated in the Guaranty Agreement and that provision was made for them. Such a conclusion is inherent in the trial court's judgment in favor of the appellees. The Guaranty Agreement provides that ACI guarantees, in part, the payment and performance of the Agreement *"and all other agreements and promissory notes required under the Agreement to be paid and performed by [EFT]."* (Emphasis supplied.) The Agreement, in turn, requires EFT to assume and pay, among other things, any obligation, contract, or liability of Old JBA's existing at the closing date. It also states that Old JBA is not a party to any written or oral lease "[e]xcept as listed and described in Schedule 5.18" of the Agreement. Included in Schedule 5.18 is a copy of the lease between PIGOMA and Old JBA. Section 12.13 of the Agreement provides that "[a]ll Exhibits and Schedules referred to herein are intended to be and hereby are specifically made a part of this Agreement."

ACI contends that the trial court erroneously relied on

language contained in the "Recitals" portion of the Guaranty Agreement. This portion of the Guaranty Agreement provides that

> a. EFT . . . was formed for the express purpose of acquiring all of the assets of [Old JBA] and, accordingly, [ACI] has a financial interest in [EFT] and is willing to give this Guaranty Agreement in order to induce [Old JBA] and Shareholders to enter into an Agreement for the Sale and Purchase of Assets with [EFT] contemporaneously with this Guaranty.
>
> b. [Old JBA] and Shareholders will execute and deliver the Agreement only if the payment thereunder and the performance thereof, including the payment and performance of all agreements and promissory notes required by said Agreement to be executed, delivered, paid and performed by [EFT], shall have been guaranteed by [ACI].
>
> c. [ACI] is willing to guarantee to [Old JBA] and Shareholders the full, prompt and satisfactory performance by [EFT] under the Agreement and all agreements and promissory notes required or contemplated by said Agreement to be paid or performed by [EFT].

Citing *McKinnon v. Baker*, 220 Neb. 314, 370 N.W.2d 492 (1985), the trial court's order states that the "recitals [in the Guaranty Agreement] are to be used as strong evidence of the parties['] intent *when the promissory language is ambiguous, as at least arguably claimed by [ACI]*." (Emphasis supplied.) In our latest pronouncement on recitals, *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986), without reference to ambiguity, but quoting *Strickland v. Omaha Nat. Bank*, 181 Neb. 478, 149 N.W.2d 344 (1967), we stated, "*Recitals*, however, *may be looked to 'in determining* the proper construction of the contract or *the intention of the parties.*' " (Emphasis supplied.) 221 Neb. at 797, 381 N.W.2d at 113. In *Strickland*, we declared that "[a] written contract expressed in unambiguous terms is not subject to interpretation or construction and the intention of the parties to such a contract must be determined from its contents." 181 Neb. at 484, 149

N.W.2d at 351. We further held that "[r]ecitals as a general rule are not strictly any part of a contract although *they may be looked to in determining* the proper construction of the contract or *the intention of the parties.*" (Emphasis supplied.) *Id.*

The trial court was not clearly wrong in finding that ACI intended to guarantee EFT's performance under the Agreement and any other agreement required by the Agreement in order to induce Old JBA to enter the Agreement. In this case, whether considered with or without the recitals, the Guaranty Agreement and other relevant documents clearly set forth the intent of ACI to guarantee EFT's performance under the Agreement and under any other agreement required by the Agreement in order to induce Old JBA to enter into the Agreement. The lease between PIGOMA and Old JBA was a part of the Agreement, and the documents at tab 10 were agreements required by the Agreement. The liability of ACI under the lease affirmatively appears from the language of the Guaranty Agreement.

Nevertheless, ACI argues that certain language contained in the Agreement indicates that it was not the parties' intent to benefit PIGOMA. Section 12.11 provides that "[t]he representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the parties hereto and their successors and assigns, and they shall not be construed as conferring and are not intended to confer any rights on any other persons." This argument is without merit. The trial court was not clearly wrong in finding that although not signatories to the Agreement, as third-party beneficiaries, PIGOMA and the Individual Appellees are parties within the meaning of § 12.11 of the Agreement. As previously stated, the Individual Appellees signed the Agreement as shareholders of Old JBA, and in addition, Jorgensen executed the Agreement as Old JBA's president. In *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983), we construed the terms of an agreement which required minority shareholders to offer their stock in equal shares to majority shareholders Davis and Lauritzen. Paragraph 6 of that agreement stated that its provisions were " 'binding upon and

shall inure to the benefit of the executors, administrators, personal representatives, heirs or successors of the parties to this agreement. . . .' " *Id.* at 555, 335 N.W.2d at 525. We stated that although Davis and Lauritzen were not signatories to the agreement, "they were unquestionably 'parties' to the agreement. It seems clear beyond argument that Davis and Lauritzen were . . . parties within its meaning in paragraph 6 of the . . . agreement." *Id.* at 557, 335 N.W.2d at 526. PIGOMA and the Individual Appellees had a right, as third-party beneficiaries of the Guaranty Agreement, to sue ACI when JBA, Inc., abandoned the warehouse property and refused to fulfill its obligations under the lease.

ACI objects to the admission into evidence of ACI's annual reports for the years 1984 and 1985. Both reports state that *"ACI leases a facility from former owners of JBA, who are now employees of ACI."* (Emphasis supplied.) The reports also relate the amount of monthly rental on the lease and the length of the remaining lease term. At trial, Jorgensen testified that the facility referred to in the reports was the property involved in the PIGOMA lease. Even without these statements against the interest of ACI, the evidence is more than sufficient for a fact finder to hold that ACI intended to, and did in fact, guarantee the lease payments required of JBA, Inc. Therefore, admission of the reports was, at most, harmless error.

## CONSTRUCTION OF DOCUMENTS

ACI maintains that "the lease was assumed by EFT as the result of a separate series of agreements, found under Tab 10 of Exhibit 1, which were neither referred to nor incorporated into the Agreement." Brief for appellant at 15-16. At trial, Jorgensen, one of the signatories to the Guaranty Agreement and the Agreement, testified that all of the documents dated April 3, 1984, were signed on that date in the conference room of the attorneys representing ACI. He stated that "they were all laid out on a conference room table and we had kind of a signing ceremony. We went through the line and signed them all as a part of the purchase." According to Jorgensen, the instruments were subsequently bound into a volume (exhibit 1) at the direction of attorneys of the law firm of Erickson &

Sederstrom, P.C., which, it appears, represented the purchaser. In the present proceedings, the law firm of Erickson & Sederstrom represents ACI, the parent company of EFT, the name of which was changed to JBA, Inc.

The documents contained at tab 10 of exhibit 1 refer to the PIGOMA lease, which was incorporated into the Agreement through Schedule 5.18. Instruments made in reference to and as a part of a transaction should be considered and construed together. *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686 (1992).

In *Kearney Centre Inv. v. Thomas*, 229 Neb. 21, 424 N.W.2d 620 (1988), a lessor sued to collect damages for breach of a lease from the alleged guarantors of the lease. During the course of the trial, there was a dispute in the evidence surrounding the execution of the lease and guaranty, the effect of the guaranty, and whether the lessor was the real party in interest. This court stated that

> there is sufficient evidence for the trial court to have found that this instrument was physically attached to the lease between [the original lessor and the lessee] at the time that it was executed by the lessee. As such, it became a part of the lease. The fact that the name of the lessee did not appear in the body of the guaranty is of no material consequence. By reading both documents as one instrument, there could be no question that the guaranty was given by [the alleged guarantors] to guarantee the performance of [the lessee]. Moreover, there is sufficient evidence for the trial court to have found that the lease and guaranty were executed in the course of the same transaction, and at the same time.

*Id.* at 26, 424 N.W.2d at 623. Similarly, in the case under consideration, the Guaranty Agreement; the documents at tab 10; and the Agreement, which included a copy of the PIGOMA lease, although not bound together at the time of the execution, were subsequently caused to be bound together by the purchaser's attorneys. In addition, the assignment, consent, and acceptance documents regarding the lease, Agreement, and Guaranty Agreement were all executed in the course of the same transaction and at the same time. The trial court was not clearly

wrong in holding that all of the documents were a part of one transaction. There is no merit to ACI's contention that the various documents should be construed separately. See, also, *Murphy v. Stuart Fertilizer Co.*, 221 Neb. 767, 380 N.W.2d 631 (1986) (guaranty agreement which was attached with Scotch tape to sales agreement by guarantors or their attorney was part of the sales agreement).

Finally, in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are, in the eyes of the law, one instrument and will be read and construed together as if they were as much one in form as they are in substance. *Kearney Centre Inv. v. Thomas, supra.* The Agreement and the Guaranty Agreement were both executed by the identical parties, including Haddix as president of ACI. The Acceptance of Assignment and Assumption, in which EFT agreed to perform under the PIGOMA lease, was executed by Haddix as president of EFT, a wholly owned subsidiary of ACI. These instruments were executed in the course of the same transaction on April 3, 1984, for the purpose of selling the assets of Old JBA to EFT, which subsequently changed its name to JBA, Inc. The trial court was not clearly wrong in construing the documents together.

ACI argues that the trial court erred in concluding that the PIGOMA lease was assigned to, and assumed by, EFT by the terms of the Agreement. ACI asserts that the lease was not a "liability" as defined by § 1.7 of the Agreement because the word "lease" did not appear in the definition. ACI claims that although a lease is a "specie of 'contract,' " brief for appellant at 16, its omission from the definition of liabilities is significant because the word "lease" appears elsewhere in the document. According to ACI, "the logical conclusion . . . is that the parties intended to treat leases differently than general liabilities assumed under . . . the Agreement." Brief for appellant at 17. We disagree. The Agreement clearly specifies that *any* contract of Old JBA's which existed at the closing date was a liability and that EFT would assume, pay, perform, and discharge the liabilities.

ACI argues that the lease was not an obligation of Old JBA's

"existing at the Closing Date" because the closing date of the Agreement and the Guaranty Agreement was April 3, 1984, and the documents appearing at tab 10 which relate to the assignment and assumption of the lease were expressly made retroactive to April 1, 1984. Therefore, according to ACI, Old JBA "had no existing obligation or liability for the lease and the lease could not have been a 'liability' as that term was used in [the Agreement]." Brief for appellant at 17. This argument has no merit. Jorgensen testified that the closing was originally scheduled to take place on April 1, but that the paperwork was not completed at that time. He said that the closing date was moved back to April 2 and then finally to April 3. The documents appearing at tab 10 were not signed until April 3. Because the documents were not signed until the closing on April 3, Old JBA was still liable under the lease at the time of the closing, despite the documents' being made retroactive to April 1.

For support of its position, ACI relies upon § 11.4 of the Agreement, which provides that "[t]o the extent that the assignment of any . . . lease . . . to be assigned to [EFT] shall require the consent of the other party thereto, this Agreement shall not constitute an agreement to assign the same if an attempted assignment would constitute a breach thereof." ACI claims that an attempted assignment of the lease by Old JBA without first obtaining the written consent of PIGOMA would constitute a breach of the lease agreement and that therefore the Agreement did not constitute an assignment of the lease to EFT. However, during the signing of all of the documents, PIGOMA did execute a consent to the assignment of the lease to EFT. Its consent, in writing, is found with the group of documents located at tab 10 in exhibit 1.

## DURATION OF GUARANTY AGREEMENT

Paragraph 2 of the Guaranty Agreement states that "[t]he liability and obligation of [ACI] under this Guaranty Agreement shall be absolute and unconditional and shall remain in full force and effect *until [EFT's] liability to [Old JBA] and/or Shareholders* has been completely discharged." (Emphasis supplied.) ACI argues (1) that the only liabilities

created by the agreements running from EFT to Old JBA were the commitments to assume the lease and to indemnify Old JBA for any liability and (2) that these liabilities of EFT's ran to PIGOMA, not to Old JBA. Therefore, according to ACI, EFT fulfilled its commitment to Old JBA when it executed the assumption agreement on April 3, 1984. Because PIGOMA also released Old JBA from liability on the lease and has never pursued Old JBA for payment, ACI claims that EFT's liability to Old JBA has been completely discharged and that the Guaranty Agreement has expired by its own terms.

In the Acceptance of Assignment and Assumption, located at tab 10, EFT agreed as part of the consideration for the assignment of the PIGOMA lease to "assume and agree to make all payments due and to become due from and after April 1, 1984 and to perform all of the covenants and conditions of the [PIGOMA] Lease." By the clear terms of this document, EFT's liability to Old JBA and its shareholders is not discharged until the lease term expires. ACI's obligations under the Guaranty Agreement regarding the lease were not discharged with execution of the assumption agreement. This assignment of error by ACI is without merit.

## SUFFICIENCY OF EVIDENCE

ACI's claim that the judgment of the trial court is not supported by the evidence and is contrary to law also has no merit. The evidence clearly reflects that the parties intended that the lease payments be guaranteed by ACI. The trial court's factual findings were not clearly erroneous and will not be set aside.

The trial court was correct in construing the documents together and in finding that PIGOMA and the Individual Appellees have standing as third-party beneficiaries to enforce the terms of the Agreement and Guaranty Agreement. The judgment of the trial court must be affirmed.

AFFIRMED.

WHITE, J., not participating.