# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1344
_____

United States of America

*Plaintiff - Appellee*

v.

Nebraska Beef, Ltd.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 15, 2018
Filed: August 27, 2018
_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.
_____

SMITH, Chief Judge.

Nebraska Beef, Ltd. ("Nebraska Beef") appeals the district court's[1] grant of summary judgment to the government in this action to enforce a settlement agreement. We affirm.

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

## I. *Background*

In 2012, the United States Office of Special Counsel for Immigration-Related Unfair Employment Practices (OSC),[2] a section in the Department of Justice (DOJ), began an investigation into Nebraska Beef, a meat-packing company. The investigation sought to determine whether the company discriminated against immigrant workers in violation of 8 U.S.C. § 1324b. Specifically, the OSC alleged that Nebraska Beef unlawfully required work-authorized immigrants to provide certain documents not required of non-immigrants. *See* 8 U.S.C. § 1324b(a)(6).

In 2015, rather than proceed into litigation, the government and Nebraska Beef entered into a settlement agreement. The agreement required Nebraska Beef to pay a $200,000 civil penalty and to provide back pay to those who were not hired as a result of the practice or whose hiring was delayed by it. Nebraska Beef also agreed not to engage in any such practices in the future. The third and fourth opening recitals of the agreement set forth the parties' positions on liability:

> WHEREAS, the Office of Special Counsel concluded based upon its investigation that there is reasonable cause to believe that Respondent used documentary practices based on citizenship status in violation of [8 U.S.C. § 1324b(a)(6)].

> WHEREAS, Nebraska Beef denies that it has used any documentary policies or practices based on citizenship status in its employment eligibility verification process in violation of 8 U.S.C. § 1324b(a)(6).

Appellant's Add. at 10.

---

[2]The OSC underwent a name change, becoming the Immigration and Employment Rights Section, after litigation in this case began. For ease of reference, we refer to it as the OSC in this opinion.

Paragraph 3(b) stated, "The Office of Special Counsel maintains its right, as a federal agency statutorily charged with serving and educating the public regarding the scope of its enforcement activities, to notify the public, including but not limited to individuals [Nebraska Beef] identifies and notifies pursuant to paragraph 3, about this Agreement." Appellant's Add. at 11.

Nebraska Beef signed the agreement on August 20, 2015, and the government executed it four days later. That same day, the OSC issued a press release announcing the agreement on the DOJ website. The webpage also linked to a copy of the settlement agreement. The first two paragraphs of the release stated:

> The Justice Department announced today that it reached a settlement with Nebraska Beef Ltd., a meat packing company headquartered in Omaha, Nebraska. The settlement resolves an investigation by the Office of Special Counsel for Immigration-Related Unfair Employment Practices (OSC) into whether the company was engaging in employment discrimination in violation of the Immigration and Nationality Act (lNA). In particular, OSC investigated whether the company was requiring non-U.S. citizen employees, because of their citizenship status, to present proof of their immigration status for the employment eligibility verification process.
>
> The department's investigation found that the company required non-U.S. citizens, but not similarly-situated U.S. citizens, to present specific documentary proof of their immigration status to verify their employment eligibility. The INA's anti-discrimination provision prohibits employers from making documentary demands based on citizenship or national origin when verifying an employee's authorization to work.

Appellant's Add. at 20. Three days later, Nebraska Beef's counsel sent a letter to the OSC accusing it of breaching the agreement. The letter stated that the DOJ lacked the authority to make a finding that Nebraska Beef "required non-U.S. citizens . . . to

present specific documentary proof of their immigration status" as described in the press release. Appellant's Add. at 22. Nebraska Beef stated that it never agreed to such a finding and that the agreement did not provide for such a finding. Nebraska Beef declared that, as a consequence of the government's breach, it would not make any of the payments required by the agreement.

After Nebraska Beef made good on that threat, the government filed this breach-of-contract suit to compel compliance with the settlement agreement. Nebraska Beef counterclaimed for breach of contract and sought declaratory relief. Specifically, Nebraska Beef sought an order releasing it from its obligations under the agreement because the government's statement that its "investigation found" wrongdoing was a material breach excusing its nonperformance.

Nebraska Beef filed a motion for partial summary judgment, and the government filed a cross-motion for summary judgment. The central question facing the district court was whether the government's press release stating that its investigation found that Nebraska Beef had engaged in illegal employment practices constituted a material breach of the agreement. The district court determined that it did not and ruled in favor of the government.

The district court began its analysis by discussing the effect of the recitals and concluded that "under Nebraska law, recitals are generally understood to be useful insofar as they are able to clarify ambiguous or imprecise portions of an agreement." *United States v. Nebraska Beef, Ltd.*, No. 8:15-cv-00370-JFB-TDT, 2016 WL 10636373, at *2 (D. Neb. Dec. 9, 2016) (citing *Props. Inv. Grp. of Mid-Am. v. Applied Commc'ns, Inc.*, 495 N.W.2d 483, 489 (Neb. 1993); *McKinnon v. Baker*, 370 N.W.2d 492, 494 (Neb. 1985); *In re Strickland's Estate*, 149 N.W.2d 344, 351 (Neb. 1967)). It also looked to other states' approaches to similar situations. Ultimately, the court held that the "WHEREAS" clauses in the recitals "related to Nebraska Beef's denial of liability." *Id.* at *3. The court concluded that the recitals "are binding

-4-

portions of the Settlement Agreement" because they were referenced in the operative portion of the agreement. *Id.* (citing *McGinnis v. Vischering, L.L.C.*, 808 N.W.2d 756 (Iowa Ct. App. 2011) (table decision) (holding recitals become part of the binding terms of the agreement when operative portion of agreement references term defined in recitals); *Stowers v. Cmty. Med. Ctr., Inc.*, 172 P.3d 1252, 1256 (Mont. 2007) (holding that a contract's recitals become an operative aspect of the agreement "when they include language indicating the contract is being formed in consideration of those recitals" (citation omitted))).

Despite holding that the recitals were a binding part of the agreement, the court held that no breach, material or otherwise, occurred:

> The Court does not believe that the language in the Settlement Agreement varies sufficiently so as to constitute a breach as a matter of law. The press release itself mentions the word "investigation" four times. The press release provided a link to the Settlement Agreement, where it stated that Nebraska Beef denied the allegations.
>
> The United States absolutely had the right to "notify the public" about the Settlement Agreement under Section 3(b) and that right allowed the United States to inform the public. For the sake of argument, the Court agrees that the United States used language different than the language used in the Settlement Agreement when notifying the public. However, the real question is whether the language used by the United States was a material breach of the Settlement Agreement.

*Id.* It later noted that "[t]here is absolutely nothing in the Settlement Agreement that limits or constrains the statements of the United States." *Id.* at *4.

Regarding materiality, the court stated that a material breach either "defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract." *Id.* (quoting *Siouxland Ethanol, LLC v. Sebade Bros., LLC*, 859

N.W.2d 586, 592 (Neb. 2015)). The court determined the purpose of the agreement was to "resolve the dispute in a compromise that avoided litigation" and determined that the "press release did not frustrate this purpose." *Id.*

> The use of the word "found" rather than the phrase "had reasonable cause to believe" did not frustrate the agreement between the parties to resolve this dispute without litigation. The "essential purpose" of the agreement, the negotiation that Nebraska Beef would pay a fine in exchange for the United States' not pursuing legal action against them, remains intact.

*Id.* The court granted the government's motion for summary judgment and ordered Nebraska Beef to abide by the settlement.[3]

## II. *Discussion*

"We review a grant of summary judgment *de novo*." *Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 851 (8th Cir. 2008) (citation omitted). Because Nebraska Beef has failed to identify a promise breached by the OSC, we affirm.

As an initial matter, we note that the government, citing *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 520 (8th Cir. 2001), alleges in a footnote that federal common law applies to this case. Nebraska Beef did not address this contention. Nonetheless, we find no error in the district court's application of the law of Nebraska, the forum state.

In *United States v. Bame*, the government sued for unjust enrichment to recover a mistakenly disbursed tax refund and sought the application of federal common law.

---

[3]Though there was a post-judgment dispute regarding a stay of enforcement of the agreement pending the disposition of Nebraska Beef's appeal, that issue is not before this court.

721 F.3d 1025, 1026, 1030 n.4 (8th Cir. 2013). We determined that the application of federal common law was appropriate "only when 'there is a significant conflict between some federal policy or interest and the use of state law.'" *Id.* at 1030 n.4 (quoting *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994)). We concluded that "[f]or federal common law to apply, the government would need to identify 'a specific, concrete federal policy or interest that is compromised by [state] law.'" *Id.* (second alteration in original) (quoting *O'Melveny & Myers*, 512 U.S. at 88). In *Bame*, there was no compromise of federal policy or interest. We therefore applied the substantive law of Minnesota, the forum state. The instant case similarly involves no compromise of federal policy or interest caused by applicable Nebraska contract law.[4] Accordingly, we agree with the district court's use of Nebraska law.

"In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002) (citation omitted). "A breach is the nonperformance of a duty . . . ." *Weber v. N. Loup River Pub. Power & Irrigation Dist.*, 854 N.W.2d 263, 271 (Neb. 2014). A breach that is material excuses the nonbreaching party of its duty to perform its obligations under the contract. *Siouxland*, 859 N.W.2d at 592.

---

[4]We also note that the government concedes that this "dispute centers on application of well-established common law principles to the facts of the case." Appellee's Br. at 10 n.5. As we see no variance between Nebraska state law and federal common law on this issue, the result would be the same under either. *See Sw. Bell Tel. Co. v. Connect Commc'ns Corp.*, 225 F.3d 942, 949 (8th Cir. 2000) (Arnold, J., dissenting) ("It might well be state law or it might be federal common law, but in any case the principles would likely be the same, or virtually identical, because of the general uniformity of the contract principles applied throughout the country in state and federal courts alike.").

Nebraska Beef first argues that the OSC's press release misrepresents the agreement and the facts, and it contends that the government's claim to have "found" a violation exceeds the scope of an agency's powers. It states that "having 'found' something occurred unequivocally suggests that it did, in fact, occur. An allegation and a finding of fault are entirely different things. The distinction here is amplified when news outlets in turn repeated the DOJ's 'finding' of wrong doing [sic] from the Press Release." Appellant's Br. at 10. In support, Nebraska Beef cites Black's Law Dictionary, which defines "find" as "[t]o determine a fact in dispute by verdict or decision." *Find*, Black's Law Dictionary (10th ed. 2014). It also cites a case from the Eastern District of Texas in which the court held it improper for an agency to disqualify contractors from projects based on "administrative merits determinations" that were essentially unadjudicated allegations of wrongdoing. *Associated Builders & Contractors of Se. Tex. v. Rung*, No. 1:16-CV-4252016, 2016 WL 8188655, at *6 (E.D. Tex. Oct. 24, 2016). According to Nebraska Beef, these authorities support the proposition that an agency may not claim to have made a finding in the absence of either an admission by the party accused of wrongdoing or some judicial process.

Nebraska Beef also claims that the district court construed the essential purpose of the agreement too narrowly. Though it agrees that avoiding litigation was a motivation for settling the case, Nebraska Beef avers that it *also* sought to avoid any admission of liability. In support, it cites *Priem v. Shires*, in which a Texas court identified the purpose of a settlement agreement as "compromising doubtful and disputed claims so as to avoid litigation and buy peace without admitting liability." 697 S.W.2d 860, 864 (Tex. Ct. App. 1985).

The government responds that nothing in the settlement agreement prohibited it from characterizing the settlement as it wished in a press release announcing the agreement. The government is correct. The settlement agreement does not contain any stipulated facts nor an admission by Nebraska Beef that the company violated federal law. However, though the agreement did not explicitly authorize the OSC to state that

its investigation found violations, the agreement also *did not forbid* the OSC from doing so. We find it somewhat troubling for the government to enter into a settlement in which the accused party maintains its innocence yet the government nonetheless declares it found violations of the law. But while conducting litigation and public relations in this fashion may be suspect, it does not materially violate the settlement agreement in a manner that would excuse Nebraska Beef's obligations thereunder.

To find a breach, we must first find a promise. *Henriksen*, 643 N.W.2d at 658. As the district court held, "There is absolutely nothing in the Settlement Agreement that limits or constrains the statements of the United States . . . ." *Nebraska Beef, Ltd.*, 2016 WL 10636373, at *4. Whether the recitals should be considered binding, as the district court concluded, need not be resolved, because nothing in the agreement imposes a duty on either party to do or abstain from anything with regard to how they publicly describe the enforcement action. Because the government did not fail to fulfill any promise, Nebraska Beef's breach-of-contract counterclaim fails and the government's claim for enforcement prevails.

### III. *Conclusion*

Accordingly, the district court properly denied Nebraska Beef's motion for partial summary judgment and granted summary judgment in favor of the government. We affirm.

BEAM, Circuit Judge, dissenting.

The OSC breached its obligation–indeed, its contractual duty–to notify the public about the Agreement itself when it announced publicly that the "department's investigation *found*" that Nebraska Beef engaged in employment discrimination in violation of the INA. <u>Weber v. N. Loup River Pub. Power & Irrigation Dist.</u>, 854 N.W.2d 263, 270-71 (Neb. 2014) (noting that parties' obligations arise from the contracts themselves and that a breach is the nonperformance of a duty). Given the

recitals and contract language of this Agreement, along with the portrayal of the Agreement by the parties themselves in this litigation, it is axiomatic that the essential purpose of the Agreement was to avoid costly litigation and to avoid admission of liability on the part of Nebraska Beef regarding the conclusion by the OSC that it had "reasonable cause" to believe that Nebraska Beef violated 8 U.S.C. § 1324b(a)(6).

The court accurately points out that the Agreement did not forbid the OSC from stating that its investigation found violations. Ante at 8-9. However, the OSC *was* under an obligation to describe the Agreement accurately, which Agreement established only that the OSC had "reasonable cause" to believe that Nebraska Beef engaged in practices that violated the INA and that Nebraska Beef denied the same. The statement by the OSC in the press release that it "found" that the company violated the INA imparts the idea that Nebraska Beef did, indeed, do so, a far cry from a "reasonable cause" to believe that a violation occurred. Accordingly, OSC's public statement was a material breach of its duty under the Agreement to accurately notify and educate the public. Siouxland Ethanol, LLC v. Sebade Bros., LLC, 859 N.W.2d 586, 592 (Neb. 2015) ("A 'material breach' is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract." (alteration and quotation omitted)). To make a "finding" means "[t]o determine a fact in dispute by verdict or decision." Black's Law Dictionary (10th ed. 2014). There was no such "finding" here. Accordingly, I dissent.

_____